Catherine WILLIAMS, Plaintiff,

v.

NORTHFIELD MOUNT HERMON SCHOOL, and Jane E. Robinson and Nancy Twinem, Defendants.

Civ. A. No. 78–0356–F.

United States District Court, D. Massachusetts.

Jan. 16, 1981.

Catherine Williams, pro se.

Geoffrey A. Wilson, Trudel, Bartlett, Barry & Filler, Greenfield, Mass., for defendants.

MEMORANDUM

FREEDMAN, District Judge.

I

Jeanne Williams brought this action *pro se* on behalf of her then minor daughter Catherine Williams in February 1978 seeking injunctive relief and damages. Following amendment of the complaint, the case came to be heard on plaintiff's motion for a temporary restraining order which was denied. Subsequently, Catherine Williams became eighteen years of age and was substituted as party plaintiff.[1] She is also pro-

---

1. Although the amended complaint was filed by Jeanne Williams on behalf of her daughter    Catherine Williams and thus refers to Jeanne Williams as plaintiff, the Court, because of the

ceeding *pro se*. The case is presently before the Court on defendants' motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted. F.R.Civ.P. 12(b)(6).

The claims in this case relate to the conduct of defendants during plaintiff's enrollment at and subsequent dismissal from defendant Northfield Mount Hermon School, a private boarding school in Northfield, Massachusetts. Plaintiff, a black, alleges that the defendants' actions violated her rights under the Fourteenth Amendment and 42 U.S.C. § 1981. Plaintiff also alleges a conspiracy between defendants Jane E. Robinson, Head of Northfield Mount Hermon School, and defendant Nancy Twinem, Dean of the Northfield Campus of the School, to deprive her of her rights or privileges as a citizen of the United States in violation of 42 U.S.C. § 1985(3). Jurisdiction is based upon 28 U.S.C. § 1343.

## II

In her long and detailed amended complaint, plaintiff alleges a factual background comprised of several incidents involving the named defendants Twinem and Robinson and other personnel of Northfield Mount Hermon School. The events occurred between September 17, 1977, when plaintiff entered the school as a sophomore, and the date of her dismissal and departure on January 27, 1978. Accepting as true all material allegations of the amended complaint, as the Court must in considering a 12(b)(6) motion, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *see also O'Brien v. DiGrazia*, 544 F.2d 543, 545 (1st Cir. 1976), *cert. denied* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977), the following factual pattern emerges:

On or about October 31, 1977, Catherine Williams called her mother from school to tell her that Richard Ely, a dormitory supervisor at Northfield Mount Hermon, was writing a letter to plaintiff's parents regarding her use of marihuana at the school.[2] Ely spoke to plaintiff's mother at this time, and subsequently sent a letter dated November 3, 1977. Amended Complaint, Exhibit A. On November 12, 1977, plaintiff and her parents met with Ely in his apartment at the school and discussed the situation. Ely explained that it was the school's practice to put in writing and notify parents only about those matters which a student admits, and that in the absence of such admission, nothing is put in writing or reported verbally. Plaintiff's parents expressed their concern that too much time had elapsed between Ely's learning of plaintiff's use of marihuana at the school and his reporting to plaintiff's parents. They requested future violations be brought to their attention immediately. Ely's letter was placed in plaintiff's school file, although there was no indication in the conversation between Ely and plaintiff's parents that this would happen.

Plaintiff stopped using marihuana on or about November 5, 1977. Sometime after the meeting between Ely and plaintiff's parents, a white friend of Catherine Williams named Shirley Hibbard informed Catherine that she too had admitted using marihuana at school to Ely but that he had not written any letters about it to either her parents or anyone else.

On November 12, 1977, plaintiff and her friend Shirley Hibbard visited the room of a male student who gave them "an alcoholic beverage to drink as well as pills of unknown content, both of which [they] consumed." Amended Complaint, ¶ 15. When Catherine Williams told Ely about this incident, purportedly in confidence, he told her she would be placed on a Leave of Absence.

substitution of Catherine Williams as party plaintiff, will refer to Catherine Williams as plaintiff in this memorandum.

**2.** *Plaintiff notes that use of marihuana constitutes a violation of a major school rule as outlined in the 1977–78 Mount Hermon Student Handbook. Amended Complaint, ¶ 8; see also, id. Exhibit B. The handbook states that "The* first violation of a major school rule usually results in a one-week suspension and a strict probation for one term. A second violation usually entails an appearance before the Judicial Commission, where a student must show why he or she should be allowed to remain in the community." *Id.* The Judicial Commission is discussed in note 3, *infra*.

However, when defendant Nancy Twinem confronted Catherine Williams in connection with the alcohol and pills incident, Twinem told plaintiff that she would be suspended for a week. Plaintiff and Shirley Hibbard were in fact suspended for a week and placed on Disciplinary Probation. The male student involved was dismissed from the school.

Plaintiff served her suspension, and pursuant to her parents' desires, also took a one-week Leave of Absence in order to receive counseling from professionals who knew her at home. Following her return to school, plaintiff received a letter dated December 21, 1977 from defendant Nancy Twinem setting out the terms and conditions of her probation. Amended Complaint, Exhibit C. Shirley Hibbard told plaintiff that she received a similar letter on November 28, 1977. Catherine's letter explained that another violation of a major school rule or "a significant violation of probation . . ." would lead to an appearance before the school's Judicial Commission.[3]

Amended Complaint, Exhibit C, ¶ 5. The meaning of the phrase "a significant violation of probation" was never explained to Catherine Williams by Nancy Twinem.[4]

The amended complaint next turns to the series of events leading to plaintiff's dismissal from Northfield Mount Hermon School in January 1978. On January 16, defendant Nancy Twinem called plaintiff's mother and informed her that Catherine had been involved in food throwing, spraying room freshener, and an alleged incident of drinking alcohol during the preceding week. Twinem requested that plaintiff withdraw or take a Leave of Absence from the school. Plaintiff's parents consulted with professionals who had met with plaintiff previously and they suggested that Catherine take a Leave of Absence to receive counseling.

On January 19, 1978, plaintiff called her mother and told her that Twinem and Ely had removed plaintiff from class and tried to get her to confess to the alleged drinking incident. Plaintiff's mother called the

3. According to the allegations of and exhibits to the amended complaint, the Judicial Commission at Northfield Mount Hermon School does not determine guilt or innocence, but instead considers violations of school rules which a student has admitted, then makes recommendations as to disciplinary measures to the Head of the school. The Commission is comprised of various members of the school community, both faculty and students. Students appearing before the Commission may bring one or two persons, either faculty members or students, to speak on their behalf during proceedings. *See* Amended Complaint, ¶ ¶ 42–45, Exhibits B, C, and D.

4. Exhibit C to the Amended Complaint, the letter dated December 21, 1977 from Nancy Twinem to Catherine Williams, states in part:

Although I have seen you and have gone over with you the terms of your Probation, I realize that I never have put into writing what led to the Probation. It seems that on November 12 you were found to have done a fair amount of drinking and taken some other substance on top of that. Once this was sorted out and brought to Mr. Ely's and my attention, you were suspended until after Thanksgiving vacation. At that point you were placed on a Leave of Absence until December 4 in order to give you and your family enough time to assess whether being at Northfield Mount Hermon was right for you at the present time. In addition to the

suspension, you were placed on a Disciplinary Probation which will be reviewed at the Interim of Winter Term. The terms and conditions of this Probation are as follows:

1. Promptly upon your return from vacation, I would like you to come in and set up an appointment with me which we can keep on a regular weekly basis. This will give us an opportunity to see how things are going for you.

2. Because absences themselves are technically violations of Probation, you must be scrupulous with regard to attendance in *all* areas, including classes, work job, P.E., assemblies, dorm check and the like.

3. All permissions to go off campus on a weekend or overnight must be cleared with me as well as with your Dorm Head.

4. You must demonstrate through your positive decisions and behavior that you do indeed wish to be at [Northfield Mount Hermon].

5. This Probation carries with it the understanding that further violations of a major school rule or a significant violation of Probation, will lead to an appearance before the Judicial Commission. The result of such an appearance is most often dismissal from school. This is said not in anticipation, but rather to make you fully aware of the consequences of further inappropriate behavior.

Head of Northfield Mount Hermon, defendant Jane Robinson, and arranged a meeting on January 24, 1978 with plaintiff, her parents, Twinem, Ely, and Robinson. On January 24, a series of meetings took place. Initially, all parties agreed that Catherine Williams should not have to appear before the school's Judicial Commission. Plaintiff's parents requested a Medical Leave of Absence for Catherine, but defendant Twinem denied this request without following usual consultative process. Defendant Robinson requested that plaintiff's parents withdraw Catherine from school, but they refused. Plaintiff's parents then requested that Ely, Twinem and Ms. Schwingel, an English teacher at the school, withdraw themselves from any further participation in actions where plaintiff was concerned because of their alleged bias against her.[5]

Ultimately, defendant Robinson presented plaintiff and her parents with the choice of plaintiff's appearance before the Judicial Commission, withdrawal, or referring the matter to their respective lawyers. Catherine Williams, presented with a choice of withdrawing or appearing before the Judicial Commission, chose the Judicial Commission appearance.

At the conclusion of the January 24 meeting, defendant Robinson advised plaintiff's parents that Catherine Williams would have to be moved out of her dormitory and housed elsewhere on campus. Over her parents' objections, Catherine spent the next four nights at various faculty residences on the Northfield Mount Hermon campus.

On January 25, 1978, plaintiff received notice of the time and place of her appearance before the Judicial Commission. Amended Complaint, Exhibit D.[6] Plaintiff asked defendant Twinem the meaning of the phrase "your having violated the terms of your Disciplinary Probation" which appeared as the charge in her notice of the Judicial Commission proceedings. Twinem told plaintiff that each of the charges would be taken into the Judicial Commission proceedings and destroyed before adjournment in order to protect individuals appearing before the Judicial Commission from having any information on the paper getting to the outside of the meeting room. Plaintiff did not know the specific charges against her; additionally, defendant Twinem informed plaintiff that she had to appear before the Judicial Commission whether or not she was prepared.

The Judicial Commission met to consider Catherine Williams' case on January 26, 1978 at 4:15 p. m. Plaintiff's parents earlier that day sent a telegram to Howard L. Jones, President of Northfield Mount Hermon School and defendants Robinson and Twinem reiterating their objection to participation in the Judicial Commission by persons whom they considered biased against Catherine Williams.[7] Amended Complaint, Exhibit E. Although this telegram was received prior to Judicial Com-

---

5. Plaintiff alleges that Ms. Schwingel had indicated to plaintiff's mother that the male senior student who was dismissed as a result of the drinking and pill incident for which plaintiff was originally disciplined was one of her (Ms. Schwingel's) "favorite students." Amended Complaint, ¶ 35.

6. The notice from Nancy Twinem to Catherine Williams reads as follows:

This note is to inform you in writing that you have been scheduled to meet the All-School Judicial Commission on Thursday, January 26, at 3:30 p. m. in Stone Faculty Lounge. As you know, this appearance comes as a result of having violated the terms of your Disciplinary Probation.

I am assuming that you will ask one or two people, student or adult, to come and speak on your behalf and you should notify them of the time and place. Meanwhile, I will have asked all those who see you regularly to submit comments in order that we might have as complete and total a picture as possible.

Do let me know if you have any questions regarding the process or if there are other ways in which I can be of help to you. Amended Complaint, Exhibit D.

7. Plaintiff's parents objected, *inter alia*, to the participation of a Ms. Thorton in Judicial Commission proceedings. Ms. Thorton was a "health resource person on campus," *see* Amended Complaint, Exhibit A, with whom plaintiff had been meeting. Plaintiff and her parents considered plaintiff's communication with Ms. Thorton to have been made in confidence. Amended Complaint, ¶ 49.

mission proceedings, it was not acted upon by defendant Twinem. Defendant Robinson did not take part in the proceedings, but while she was en route from Boston, Massachusetts either telephoned or was telephoned by defendant Twinem and informed of the Judicial Commission's decision.

By an almost unanimous vote, the Judicial Commission recommended that Catherine Williams should not remain at Northfield Mount Hermon; defendant Robinson accepted this recommendation. Plaintiff called her parents at 7:30 p. m. on January 26, 1978 and informed them of the decision.

On Friday, January 27, 1978, the Associate Dean of the Northfield campus, Peter Davies, telephoned plaintiff's father and requested that plaintiff's departure from school be expedited, and stated he would ask the Northfield police to serve plaintiff with a Trespass Notice. Plaintiff's father requested a letter from defendant Robinson stating the Judicial Commission's recommendation and her decision in the matter, as well as the procedure for appeal.

On Saturday, January 28, Davies called plaintiff's parents and read the letter. Plaintiff's parents requested a transcript of the proceedings so that they might determine what constituted new evidence for use in an appeal. Mr. Davies firmly requested that plaintiff be picked up by her parents that day, but assured them that a transcript would be out the following Monday. Plaintiff's parents thereupon drove to Northfield Mount Hermon, arriving at the Northfield Campus at approximately 3:00 p. m. and took plaintiff home.

On February 1, 1978, plaintiff received a letter from defendant Twinem dated January 30, 1978, Amended Complaint, Exhibit G, setting out in detail the reasons for her dismissal.[8] Neither plaintiff nor her parents ever received a transcript of the Judicial Commission proceedings.

---

**8.** The letter dated January 30, 1978 from Nancy Twinem to Catherine Williams stated the reasons for her dismissal as follows:

Although you have already received official notification, this letter puts into writing and summarizes the reasons for your dismissal from Northfield Mount Hermon School.

In November of this year's Fall Term, and despite both verbal and written warnings which many had hoped would have led to a change in behavior, you were suspended for a week following your acknowledged violation of the rule which prohibits the use of alcohol and drugs. The suspension was followed by a week's Leave of Absence which was requested by your parents and agreed to by the school in order that you and your family have ample time to assess whether or not being at [Northfield Mount Hermon] was right for you at the current time. You returned to school for the last week of classes and final exams.

In addition to the suspension, you were placed on Disciplinary Probation until the Interim of Winter Term—with the understanding that violations of your Probation or another violation of a major school rule would very likely lead to your dismissal from school.

A week and a half after your return from Christmas vacation, people in the dorm were sufficiently concerned by a number of incidents that your Dorm Head felt that I should be contacted. These incidents included purposely awakening some students after dorm closing, spraying Lysol spray in a student's room and over a sleeping student, throwing food and allegedly being involved in a drinking incident. When Mr. Ely and I spoke with you on Monday, January 16, you denied having been drinking but acknowledged the food throwing and Lysol spraying. I explained to you that the acknowledged behavior itself was sufficient to be in violation of your Disciplinary Probation and that if you were to appear before the Judicial, it would be for these violations. That night I called your parents, explained what had happened and outlined the options from the school's point of view.

After a series of delays, your parents came to school this past Tuesday (the same day, you were involved in another food-throwing incident) and following a lengthy discussion with Mrs. Robinson, Mr. Ely and myself, it was concluded that you would appear before the All-School Judicial Commission, an option to which you were clearly entitled. During the meeting on Thursday afternoon, the Commission members very carefully considered and assessed all the information, including the acknowledged violations as well as input from all those who see you on a regular basis, and recommended to Mrs. Robinson that you be dismissed from school. As you are painfully aware, the recommendation was accepted and the decision was relayed to you and your family that night.

Amended Complaint, Exhibit G.

Against this factual background, the amended complaint sets forth specific incidents claimed to involve racial discrimination and violations of due process rights. Plaintiff avers that she did not find out the specific charges against her when she went before the Judicial Commission, but learned of the charges from the letter written to her by Nancy Twinem. These charges were stated as follows:

a) purposely awakening some students after dorm closing;

b) spraying Lysol [a room freshener] in a student's room and over a sleeping student;

c) allegedly being involved in a drinking incident;

d) throwing food;

e) being involved in another food throwing incident.

Amended Complaint, ¶ 57; see also Amended Complaint, Exhibit G. Plaintiff points out that the Northfield Mount Hermon Parent's Handbook states that "The Judicial Commission does not serve as a jury; guilt has been established and acknowledged." Thus, plaintiff states that the charge of an alleged drinking incident, which plaintiff never acknowledged despite intensive questioning, was inconsistent with the school's procedure.

Regarding the spraying of Lysol, plaintiff alleges that she was initially charged with spraying Lysol in the face of a sleeping student, but defendant Twinem changed the charge during the course of the Judicial Commission hearing when plaintiff would not admit to the initial charge.

The charges of food throwing relate to two separate incidents. The first took place on January 10, 1978, when a white student smashed a piece of pie into plaintiff's face, whereupon plaintiff picked up the pieces of pie that fell on the floor and threw them back at her assailant. Plaintiff complains that although defendant Twinem was advised of this incident and its participants, the white student had no action taken against her, while in plaintiff's case this incident was one basis for her dismissal from Northfield Mount Hermon.

The second food throwing incident took place on January 24, 1978 when plaintiff walked into the kitchen of her dormitory and was struck by chocolate pudding which a white male student threw at her. Plaintiff retaliated, and was chased out of the room and up a flight of stairs by a white female student who brandished a handful of whipped cream. Again, defendant Twinem was advised of the incident, but allegedly took no action against the white female student even though she was on Disciplinary Probation at the time.

In summary, plaintiff Catherine Williams claims she was denied equal protection in the food throwing incidents and the incidents relating to her admission of marihuana use to Ely and his writing a letter to her parents which was placed in her school file. Plaintiff alleges that the procedures followed in dismissing her violated her due process rights.

Additionally, plaintiff alleges a conspiracy by defendants Twinem and Robinson to deprive her of equal protection and due process rights. Specifically, plaintiff alleges that this conspiracy included the following acts:

a) denial of a Medical Leave of Absence, which was also an arbitrary act because the denial was not based on the usual procedures followed;

b) denial of a Medical Leave of Absence and leaving [plaintiff] only the options of withdrawal by her parents or appearance before Judicial Commission;

c) [bringing] charges that were arbitrary because they were not applied to other students, such as, "food throwing";

d) getting plaintiff to appear before the Judicial Commission faced with vague charges, unacknowledged charges and arbitrary charges;

e) prejudging plaintiff before a Judicial Commission concluded by deciding she should not remain at defendant Northfield Mount Hermon School; and

f) not producing a transcript of the Judicial Commission proceedings so that an appeal might be formulated.

Amended Complaint, ¶ 66. Plaintiff alleges that defendant Twinem furthered the conspiracy by the following acts:

a) acting as both counselor and judge of plaintiff;

b) [failing to provide plaintiff with] written notification of specific charges and procedures in connection with plaintiff's appearance before [the] Judicial [Commission] before her appearance there;

c) refusing to explain to plaintiff the meaning of the phrase "your having violated the terms of your disciplinary probation";

d) by trying to elicit a confession from plaintiff about an alcohol drinking incident, which then would provide a charge against plaintiff of violating a Major Rule;

e) by use of misleading statement such as "spraying Lysol over a sleeping student";

f) by conducting, participating in and presenting unacknowledged charges to the Judicial Commission before which plaintiff appeared;

g) by trying to get plaintiff to acknowledge "spraying Lysol into the face of a student"; and

h) by informing defendant Robinson of the Judicial Commission recommendation.

Amended Complaint, ¶ 67. Plaintiff alleges that defendant Robinson furthered the conspiracy by the following acts:

a) moving [plaintiff] out of her dormitory and into a series of three different houses on four nights;

b) making the final decision to accept the Judicial Commission recommendations that [plaintiff] ... not remain at Northfield Mount Hermon.

Amended Complaint, ¶ 68.

### III

In moving for dismissal of the amended complaint, defendants Northfield Mount Hermon School, Jane Robinson and Nancy Twinem argue that plaintiff has failed to set forth facts sufficient to support a cause of action under either 42 U.S.C. § 1981 or § 1985(3). Regarding the § 1981 claim, defendants assert that there is no allegation of a denial solely on the basis of race by defendants of plaintiff's right to make or enforce contracts. Regarding any implied contractual conditions, defendants contend that they have accorded plaintiff the same fundamentally fair and reasonable disciplinary procedures required in the case of any student regardless of race.

Defendants challenge plaintiff's § 1985(3) claim on two alternative theories. First, defendants argue they are not conspirators within the meaning of 42 U.S.C. § 1985(3); and second, defendants contend that plaintiff has failed to allege that defendants have conspired and acted so as to deny her any of the protections, privileges or immunities to which she had a legal right in this instance. Specifically, defendants assert that plaintiff's claims are based on the Fourteenth Amendment's due process and equal protection clauses which do not apply unless significant state action is involved, and no state involvement is alleged or in fact present in this case.

### IV

When considering a motion to dismiss, the Court accepts as true all material allegations of the complaint. *O'Brien v. DiGrazia*, 544 F.2d 543, 545 (1st Cir. 1976) *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). The Court then looks to see whether the plaintiff is entitled to relief under any set of facts which could be proved in support of the claims alleged in the complaint. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In a case such as this, where plaintiff is proceeding *pro se*, the Court will construe the complaint in the light most favorable to plaintiff, *see Sisbarro v. Warden*, 592 F.2d 1, 2 (1st Cir. 1979), mindful that a 12(b)(6) motion is not the remedy for inartful pleading. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972).

At the outset of analysis of whether plaintiff's factual allegations are sufficient to state a claim for which relief may be granted, the Court must determine the nature of plaintiff's claims. The amended complaint is not divided into counts; instead, under the caption naming three defendants, plaintiff has alleged violations of her rights under the Fourteenth Amendment and 42 U.S.C. § 1981, as well as a conspiracy under 42 U.S.C. § 1985(3). The Court's interpretation of these claims is as follows: plaintiff alleges violations of her rights under the Fourteenth Amendment and 42 U.S.C. § 1981 by defendant Northfield Mount Hermon School; plaintiff's allegations regarding conspiracy within 42 U.S.C. § 1985(3) are directed at defendants Twinem and Robinson. Any deprivations of plaintiff's rights under the Fourteenth Amendment or 42 U.S.C. § 1981 as a result of the conspiracy alleged would necessarily be subsumed into plaintiff's cause of action under 42 U.S.C. § 1985(3).

Having thus characterized plaintiff's claims, the Court next notes that plaintiff makes no allegation of state involvement in the actions of defendants. Instead, plaintiff claims that defendant Northfield Mount Hermon School is a private school, and defendants Twinem and Robinson are officers of the school. Amended Complaint, ¶ 5. Although a determination of the absence of state action requires "sifting facts and weighing circumstances," *Burton v. Wilmington Packing Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961), and is thus most often an improper basis for dismissal, *see, e. g., Weise v. Syracuse University*, 522 F.2d 397, 408 (2nd Cir. 1975), in this case where plaintiff makes no allegations of state involvement, claims of deprivations of her rights are properly considered in the sphere of entirely private conduct.

With these general observations in mind, the Court will review the specific allegations of the amended complaint, initially considering plaintiff's conspiracy claim against Twinem and Robinson, then, and as a part of this analysis, turning to plaintiff's claim against Northfield Mount Hermon School.

## V

42 U.S.C. § 1985(3) states in relevant part:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

*Id.* Nine years ago in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court revived § 1985(3) by removing the limitations of *Collins v. Hardyman*, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951), ". . . which in effect construed the . . . language of § 1985(3) as reaching only conspiracies under color of state law." 403 U.S. at 92, 91 S.Ct. at 1793. Since the decision in *Griffin*, litigation involving § 1985(3) has focused upon its motivation requirement, and more particularly upon the nature of the "class based invidiously discriminatory animus," 403 U.S. at 102, which must be alleged. *See, e. g., Hahn v. Sargent*, 523 F.2d 461, 468–9, n.6 (1st Cir. 1975) *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976) (collecting cases). *Griffin* itself remains the touchstone for analysis of whether a cause of action has been stated under 42 U.S.C. § 1985(3).

In *Griffin*, a group of whites assaulted several black men traveling on a highway in Mississippi. The complaint alleged that the defendants, acting under the mistaken belief that one of the black men was a civil rights worker, "wilfully and maliciously conspired, planned, and agreed to block the passage of said plaintiffs in said automobile

upon the public highways, to stop and detain them and to assault, beat, and injure them with deadly weapons." 403 U.S. at 90, 91 S.Ct. at 1792. The complaint alleged that the purpose of this conspiracy was to prevent the black men from seeking the equal protection of the laws and from enjoying the equal rights, privileges, and immunities of citizens under the laws of the United States and Mississippi, including a long list of enumerated rights such as free speech, assembly, association, and movement. *Id.*

Justice Stuart, writing for a unanimous Court, concluded his review of § 1985(3) by stating, "[I]t is thus evident that all indicators—text, companion provisions, and legislative history—point unwaveringly to § 1985(3)'s coverage of private conspiracies." 403 U.S. at 101, 91 S.Ct. at 1797. As a limiting construction to obviate the elevation of § 1985(3) to a "general federal tort law," the Court noted "that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Id.*

The Court then elucidated four elements required to state a cause of action under § 1985(3):

> To come within the legislation a complaint must allege that the defendants did (1) conspire or go in disguise on the highway or on the premises of another (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. It must then assert that one or more of the conspirators (3) did, or caused to be done, any act in furtherance of the object of [the] conspiracy, whereby another was (4a) injured in his person or property or (4b) deprived of having and exercising any right or privilege of a citizen of the United States.

*Id.* at 103, 91 S.Ct. at 1798. Applying these standards to the complaint in *Griffin*, the Court concluded that a cause of action had been stated. The Court observed that the allegations of a conspiracy with the purpose of preventing plaintiffs through force, intimidation, and violence from enjoying listed rights, "clearly support the requisite animus to deprive the petitioners of their legal rights because of their race." *Id.* These allegations, in conjunction with claims of detention, threats, and battery, and allegations of personal injury set forth conduct "so close to the core of the coverage intended by Congress that it [was] hard to conceive of wholly private conduct that would come within the statute if this [did] not." *Id.*[9]

Applying the four elements listed in *Griffin* to the allegations of the amended complaint, the Court concludes that plaintiff has failed to state a course of action under 42 U.S.C. § 1985(3). In so concluding, the Court rests its holding on two alternative theories: first, plaintiff's amended complaint does not set forth facts sufficient to satisfy the first and third elements of *Griffin's* standard, regarding a conspiracy and

---

9. The Supreme Court's remarks concerning the sufficiency of the complaint in *Griffin* indicate that the Court considered sub-part 4(a) and not sub-part 4(b) of the *Griffin* standard to have been satisfied. As one writer has noted about *Griffin* :

> The conspiracy alleged essentially involved assault and interference with the right to travel on interstate roads resulting in personal injury. Although the conspirators may have sought to prevent blacks in Mississippi from associating with out of state civil rights workers, the Court seems to have interpreted this objective as constituting a burden on interstate travel rather than private interference with the first amendment right of association. [Cross reference omitted]. Al-

> though the conspirators' objective was to impair the petitioners' federal right to travel, there is no indication in the Courts' opinion that the conspiracy resulted in an impairment of the exercise of that right. However, even if the complaint can be read to allege an impairment of the right to travel, thus bringing the conspiracy within 4(b), that guarantee, unlike the first amendment, may be asserted against private action in any case. Note, *Federal Power to Regulate Private Discrimination: The Revival of the Enforcement Clauses of the Reconstruction Era Amendments,* 74 Columbia L.Rev. 449, 497–98 n. 287 (1974). [hereinafter *Federal Power to Regulate Private Discrimination*].

acts in furtherance thereof; second, plaintiff's allegations do not establish injury to person or property or deprivation of rights or privileges in accordance with either 4(a) or 4(b) of *Griffin's* standard. The two subsections which follow set out the reasoning behind these conclusions of the Court.

### A. *Conspiracy and Acts in Furtherance Thereof*

In the First Circuit, "[p]leading conspiracy under sections 1983 and 1985(3) requires at least minimum factual support of the existence of a conspiracy." *Francis-Sobel v. University of Maine*, 597 F.2d 15, 17 (1st Cir. 1979). Unlike *Francis-Sobel*, where the plaintiff's "pleadings were devoid of any factual allegations that would tend to link [the alleged conspirators together]," *id.*, in this case there was a clear opportunity for the defendants to conspire. However, while plaintiff has alleged a conspiracy between Twinem and Robinson, plaintiff has nowhere alleged that defendants were acting in other than their official capacities during the events leading up to her dismissal from Northfield Mount Hermon School. Although the Court may overlook inartful pleading in the context of a *pro se* complaint, the allegations of the amended complaint do not suffice to isolate the conduct of defendants Twinem and Robinson from their official duties as officers of Northfield Mount Hermon School. The conduct which plaintiff alleges as establishing a conspiracy and acts in furtherance thereof actually sets forth the conduct of Northfield Mount Hermon School acting through its officers to discipline a student.

In this regard, the third element of the *Griffin* standard may be read to an extent to recapitulate the first element concerning conspiracy. That is, in alleging an agreement between defendants to deprive her directly or indirectly of the equal protection of the laws, plaintiff sets forth a series of acts by defendants undertaken in their official capacities. However, these acts are properly attributed to the single entity Northfield Mount Hermon School, which clearly cannot conspire with itself.

Defendants have cited the carefully considered opinion of then Judge, now Justice, Stevens in *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir. 1972). In *Dombrowski*, the Seventh Circuit held that 1985(3)'s conspiracy element "is not satisfied by proof that a discriminatory business decision reflects the collective judgment of two or more business executives," 459 F.2d at 196, when the action complained of is attributable to a single entity—a corporation. *See also Girard v. 94th Street & Fifth Avenue Corp.*, 530 F.2d 66, 71 (2nd Cir. 1976). (". . . [P]laintiff does not allege that any of the individual defendants acted in any other capacity than his official role of director.").

To avoid factual and procedural distinctions between the case at bar and *Dombrowski*, defendants refer to *Cole v. University of Hartford*, 391 F.Supp. 889 (D.Conn. 1975). In *Cole*, a black former employee of a private university brought suit under § 1985(3) against the university and its president and vice-president in their official and individual capacities. The court first traced the theory that a corporation as a single entity cannot conspire with itself to its origins in antitrust law. The Court then cited Judge Wyzanski's instructions in *Cape Cod Food Products, Inc. v. National Cranberry Association*, 119 F.Supp. 900, 909 (D.Mass.1954), concerning the determination as to when a corporate official can be said to be acting in his individual, as opposed to official, capacity:

> Ordinarily, an officer of a corporation will be acting for the corporation when he acts. And therefore, there is, in contemplation of law, only one action; he is acting for the corporation and you couldn't say that there is a conspiracy when he acts for the corporation because both he and the corporation are involved.

*Id., cited* at 391 F.Supp. 892. The court in *Cole* concluded that "[s]imply joining corporate officers in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation. The plaintiff must also allege they acted other than in their normal corporate duties." 391 F.Supp. at 893, *citing Webb v. Culberson, Heller & Norton, Inc.*, 357 F.Supp. 923, 924 (N.D.Miss.1973); *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200

F.2d 911, 914 (5th Cir. 1952). Finding the only realistic target of the complaint to be the university which had allegedly discriminated against plaintiff as an employee, the court in *Cole* held that no conspiracy could be proved by plaintiff.

Other courts have reached similar conclusions in the context of conspiracy claims against universities. *See, e. g., Lieberman v. Gant*, 474 F.Supp. 848 (D.Conn.1979); *Keddie v. Pennsylvania State University*, 412 F.Supp. 1264 (1976); *Cohen v. Illinois Institute of Technology*, 384 F.Supp. 202, 205 (N.D.Ill, 1974), *aff'd* 524 F.2d 818 (7th Cir. 1975) *cert. denied*, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976); *but see Jacobs v. Board of Regents*, 473 F.Supp. 663 (S.D. Fla.1979). The Court cannot discern why the reasoning of these cases should not be applied to the instant case involving officers of a private school.[10]

Plaintiff's allegations of a conspiracy between Twinem and Robinson might be legally sufficient if facts were alleged that indicated these two defendants took actions not in accordance with their duties as school officials. There is no allegation by plaintiff, however, that the actions of either defendant were not the actions of Northfield Mount Hermon School acting through its officials; the list of acts in furtherance of the alleged conspiracy recited by plaintiff all refer to conduct undertaken by Twinem and Robinson in performance of their duties as Dean of Students and Head of the school respectively.[11]

The Court thus concludes that the amended complaint fails to set forth facts sufficient to satisfy the first and third elements of the *Griffin* standard. Discussion of the Court's alternative holding—that the amended complaint fails to satisfy the fourth element of the *Griffin* standard—requires consideration of plaintiff's claims under the Fourteenth Amendment and 42 U.S.C. § 1981.

### B. *Injury or Deprivation of Rights or Privileges*

█ Plaintiff in her amended complaint makes no allegation of injury to person or property, but instead claims that the actions of Twinem and Robinson deprived her of due process and equal protection in her dismissal from school. This allegation does not satisfy sub-part (b) of the fourth element of the *Griffin* standard. In order to invoke the Fourteenth Amendment's due process and equal protection clauses, plain-

---

**10.** It is true that the Supreme Court when recently presented with an opportunity to rule dispositively on the issue of whether the directors of a single corporation can form a conspiracy within the meaning of 42 U.S.C. § 1985(3) expressly reserved the question. *See Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 372 n.11, 99 S.Ct. 2345, 2349 n.11, 60 L.Ed.2d 957 (1979). However, in applying a single entity theory to the instant case involving a § 1985(3) claim against a private school, the Court is not expressly rejecting the possibility of an intra-corporate conspiracy. As was said in *Dombrowski v. Dowling*, "We do not suggest that an agent's action within the scope of his authority will always avoid a conspiracy finding. Agents of the Klan certainly could not carry out acts of violence with impunity simply because they were acting under orders from the Grand Dragon." 459 F.2d at 196. Rather, the Court concludes that where officials of a school act in their capacities as such in disciplining a student, their actions are properly attributed to the school itself.

**11.** Plaintiff in her memorandum of law notes that "the individual defendants are persons holding administrative positions at Northfield Mount Hermon School and the duties of their positions included administering the school's social disciplinary procedures at the time of [plaintiff's] dismissal." Plaintiff's Memorandum of Law, at 1–2. Plaintiff further argues in her memorandum that the "process [of dismissing plaintiff] started in the hands of the individual defendants, they shaped, and rolled it and presented it to the Judicial Commission and participated in the recommendation made by the Commission, and then made the final decision to dismiss [plaintiff] from Northfield Mount Hermon School. Their conspiracy succeeded." *Id.* at 6.

Even though this characterization of defendants' actions is cast in the light most favorable to plaintiff and goes somewhat beyond the actual allegations of the amended complaint, it still fails to indicate how the conduct of Twinem and Robinson was outside the scope of their offices. Simply alleging that a "conspiracy succeeded" does not transform the acts of school officials into conduct in furtherance of a conspiracy.

tiff must allege involvement by the entity to which those clauses are addressed—the state. *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948).[12] In the absence of state action, plaintiff's allegations of denials of due process and equal protection do not satisfy the requirement that plaintiff allege the deprivation of "having or exercising any right or privilege of a citizen of the United States." [13]

However, this determination of the absence of state action and thus the inapplicability of the Fourteenth Amendment does not, in and of itself, foreclose the Court's inquiry. As was stated by Justice Stevens in his concurrence in *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979),

> Some privileges and immunities of citizenship, such as the right to engage in interstate travel and the right to be free of the badges of slavery, are protected by the Constitution against interference by private action, as well as impairment by state action. Private conspiracies to deprive individuals of these rights are, as this court held in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338, actionable under § 1985(3) without regard to any state involvement.

*Id.* at 383, 99 S.Ct. at 2354 (Stevens, J. concurring).

Plaintiff has alleged that this case arises under 42 U.S.C. § 1981 which has been construed to be a source of federal rights protected against infringement by even wholly private action. *See, e. g., Runyon v. McCrary,* 427 U.S. 160, 168–9, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Johnson v. Railway Express Agency,* 421 U.S. 454, 459–460, 95 S.Ct. 1716, 1719–1720, 44 L.Ed.2d 295 (1975). The Court therefore will consider plaintiff's claim under 42 U.S.C. § 1981 to determine not only whether the amended complaint states a cause of action against defendant Northfield Mount Hermon School under that section, but also whether plaintiff has adequately alleged the deprivation of a federally protected right for purposes of satisfying part 4(b) of the *Griffin* standard.

## VI

■ 42 U.S.C. § 1981 states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

*Id.* In *Johnson v. Railway Express Agency,* 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975), the Supreme Court adopted the conclusion of several lower federal courts construing the language of § 1981 concerning "the same right to make and enforce contracts" as affording a federal remedy against discrimination on the basis of race in private employment. Subsequently, the Supreme Court held in *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49

---

12. "Since the decision of this Court in the *Civil Rights Cases,* 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), the principle has become firmly embedded in our constitutional law that the action inhibited by the First section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful." *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948) (footnote omitted).

13. Whatever doubt there may have been following *Griffin* as to the requirement that state action be alleged to state a claim for deprivation of Fourteenth Amendment rights under § 1985(3), *see, e. g., Federal Power to Regulate Private Discrimination, supra,* note 9, at 498–99, has been dispelled by recent statements of the Supreme Court. "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great American Savings & Loan Association v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979), *see also id.,* at 376, 99 S.Ct. at 2351. ("Section 1985(3), by contrast, creates no rights. It is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right—to equal protection of laws or equal privileges and immunities under the laws—is breached by a conspiracy in the manner defined by the section.").

L.Ed.2d 415 (1976), that § 1981 prohibited private, commercially-operated, non-sectarian schools from excluding qualified children solely because they were black, *id.* at 173–75, 96 S.Ct. at 2595–97, and that the statute so construed constituted a legitimate exercise of federal legislative power under § 2 of the Thirteenth Amendment.

In the instant case, plaintiff has alleged a series of actions taken against her by school officials, most notably Ely, Twinem, and Robinson. Plaintiff avers that these actions were substantially different from those taken against similarly situated white students, and contends that the disparity of treatment was the result of discrimination against her because of her race. Although the matter is not entirely free from doubt, plaintiff seems to claim that this alleged racial discrimination against her prevented her from enforcing her contract with the defendant school.

In her memorandum, plaintiff states that defendant did not "live up" to certain contractual terms regarding social disciplinary procedures. Plaintiff cites three sources for these procedures: the Parents' Handbook, the Student Handbook, and an article appearing in the school's newspaper on January 25, 1978. *See* Plaintiff's Memorandum of Law, Exhibit C. Because certain procedures set forth in these publications were not followed and such failure was the result of racial discrimination, plaintiff argues that her ability to enforce her contract with school was impaired in violation of her rights under § 1981.

Reading plaintiff's allegations and exhibits as a whole, the Court does not see in what way the defendant school failed to comply with required disciplinary procedures in plaintiff's case, or, if in fact usual procedures were in some ways not followed, how this failure prejudiced plaintiff's right to enforce her contract with the school in a manner violative of plaintiff's rights under § 1981. Plaintiff was not disciplined for her first admitted violation of a major school rule, smoking marihuana. Amended Complaint, ¶¶ 8–12. Following the incident involving plaintiff's use of alcohol and pills,

*id.* ¶ 15, plaintiff was suspended and placed on probation. *Id.*, ¶ 17. As the letter from Nancy Twinem to plaintiff made clear, one of the terms of probation was that plaintiff demonstrate through positive behavior that she wished to remain at the school. Amended Complaint, Exhibit C. Plaintiff was warned that further violations of major school rules or the terms of probation would lead to an appearance before the school's Judicial Commission. *Id.*

Plaintiff's behavior while on probation brought about the meeting between school officials and her parents. The outcome of this meeting was the decision that plaintiff appear before the school's Judicial Commission. Plaintiff was informed of the time and place of this appearance, given an opportunity to have persons appear on her behalf, and invited to ask questions concerning the impending procedures. Amended Complaint, Exhibit D.

Against this process, plaintiff points to specific shortcomings concerning notice of the charges against her and the procedures of the Judicial Commission. Plaintiff quotes the school paper's article of January 25, 1978 as stating "when a student is to appear before the Judicial, he will receive written notification of the specific charges and procedures." *See* Plaintiff's Memorandum of Law, Exhibit C. Plaintiff summarizes her claim in her memorandum arguing that a "judicial process is difficult to undergo, at best, and in these circumstances involving a threat of great and grave loss in being dismissed from school, all safeguards should have been taken to assure fairness . . . ." *Id.* at 6.

Certainly this statement is compelling in the abstract, but plaintiff fails to indicate how the alleged shortcomings in disciplinary procedures violated her federal rights. The Court is not convinced that the allegations of the amended complaint, viewed in the light most favorable to plaintiff, set forth deficiencies in the disciplinary process sufficient to indicate that plaintiff's right to enforce her contract with the school was so impaired as to state a claim under 42 U.S.C. § 1981.[14]

---

14. The allegations of the amended complaint repeatedly refer to violations of due process and equal protection in the disciplinary procedures undertaken in plaintiff's case. The Court

Plaintiff's Memorandum of Law may be read as suggesting that the alleged disparate treatment of plaintiff as compared to certain white students violated her rights under the "like punishment" clause of 42 U.S.C. § 1981. The Court, however, must reject this argument.

The "like punishment" clause of § 1981 is severable from the clause conferring the equal right to make contracts construed by the Supreme Court in *Runyon v. McCrary, supra.* The "like punishment" clause's limitation, considered in the context of entitlement to "full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...," applies to state action and proceedings and not to wholly private conduct. Reviewing the language of 42 U.S.C. § 1981, the Third Circuit concluded:

> The right "to make and enforce contracts" necessarily is concerned with relations between private individuals. It is usually with another individual, not the state, that a black person would seek to make a contract; it is that other individual's racially motivated refusal to make a contract which can cause harm to the black person. The right "to make and enforce contracts" can thus be infringed by private individuals and it is appropriate that private individuals be held liable for that infringement.
>
> The words "full and equal benefit of all laws and proceedings for the security of

persons and property" (emphasis supplied), on the other hand, suggest a concern with relations between the individual and the state, not between two individuals. The state, not the individual, is the sole source of law, and it is only the state acting through its agents, not the private individual, which is capable of denying to blacks the full and equal benefit of the law. Thus, while private discrimination may be implicated by the contract clause of section 1981, the concept of state action is implicit in the equal benefit clause. The like punishment clause may be read in the same way. Only the state imposes or requires "taxes, licenses, and exactions" and the maxim *noscitur a sociis* suggests that the "punishment, pains [and] penalties" to which the clause refers are those imposed by the state.

*Mahone v. Waddle,* 564 F.2d 1018, 1029-30 (3rd Cir. 1977), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978). The Court agrees with this reasoning, and concludes that the absence of state action is fatal to whatever claims plaintiff has put forward under the like punishment clause of § 1981.[15]

## VII

Having reviewed the allegations of the Amended Complaint of plaintiff Catherine Williams in the light most favorable to plaintiff, the Court concludes that plaintiff has failed to state a claim upon which relief

has already noted the absence of any allegation of state involvement in the action of the defendants, and thus the demands of the Fourteenth Amendment's due process and equal protection clauses are not applicable to this case. Plaintiff's allegations under § 1981 seem to be, in actuality, complaints about the failure of the defendant school to comply with the requirements of the Fourteenth Amendment. Plaintiff's claim that *Runyon v. McCrary, supra,* construed § 1981 to forbid all discrimination in private schools is unfounded. There is no doubt that plaintiff's parents, unlike the plaintiffs in *Runyon,* did contract with Northfield Mount Hermon School for the education of their daughter. *See* Amended Complaint, ¶ 6. Moreover, there is no allegation that plaintiff or her parents were denied any contractual opportunity otherwise available to white persons, and the factual allegations of

the Amended Complaint do not indicate that any shortcomings in the disciplinary process were solely the result of plaintiff's race. The Amended Complaint does not allege sufficient facts to indicate that the defendants denied plaintiff the right to equal enforcement of her contract with the school on the basis of her race.

15. The Court's determination that plaintiff has failed to state a claim under 42 U.S.C. § 1981 also closes its inquiry regarding plaintiff's claim under 42 U.S.C. § 1985(3). The Court's alternate theory that plaintiff failed to allege violation of a federally protected right as a result of the conspiracy is finalized by the Court's conclusion that plaintiff has failed to state a claim for violation of her rights under either the Fourteenth Amendment or 42 U.S.C. § 1981.

can be granted against defendants North-field Mount Hermon School, Jane Robinson and Nancy Twinem. Therefore, the defendants' motion to dismiss under F.R. Civ.P. 12(b)(6) should be granted.