**John Christopher WASHCO, and
Maryann Modugno Washco**

v.

**DARBY BOROUGH POLICE
DEPARTMENT, et al.**

No. 87–5030.

United States District Court,
E.D. Pennsylvania.

April 14, 1988.

Gregory P. Miller and Marc S. Raspanti, Hoyle, Morris & Kerr, Philadelphia, Pa., for plaintiffs.

Jay E. Mintzer, Edelstein, Mintzer & Diamond, and Bruce G. Cassidy, Desaretz & Cassidy, Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This is a civil rights case. The central claims arise under 42 U.S.C. § 1983; there are ancillary state law claims. The defendants—the Mayor of the Borough of Darby,

the Darby Police Department, its police chief, and two of its officers—have moved to dismiss the plaintiffs' complaint on all counts. For reasons to be explained in greater detail below, the defendants' motion will be granted as to plaintiff Maryann Washco's claim against defendant Galli, and denied in all other respects.

*Background*

Plaintiff John Washco claims that the defendants, pursuant to an unwritten police department policy, violated his rights under the fourth, fifth, sixth, and eighth amendments to the Constitution, and his fifth and fourteenth amendment rights to due process. He also brings several pendent tort claims against various Darby officials. Mr. Washco alleges that the defendants, primarily through defendant police officers Galli and Chapelle, carried out a systematic campaign of harassment against him. His complaint states that on three separate occasions—August 27, 1986, March 6, 1987, and May 15, 1987—the defendants subjected him to arrest and prosecutions for crimes that he did not commit. On two of these occasions, plaintiff claims that he was imprisoned and denied access to family and counsel. During the most acute of the three incidents alleged in plaintiff's complaint, plaintiff claims that on May 15, 1987, he was detained for eleven hours, denied contact with counsel and his mother, and forced to endure a strip search and other brutal treatment for the defendant officers' amusement.

Plaintiff Maryann Washco, Mr. Washco's mother, brings a single state law claim for intentional infliction of emotional distress against Officer Galli for his alleged refusal on the night of May 15, 1987, to disclose her son's whereabouts. She avers that upon hearing of her son's arrest, she went to the Darby police station to inquire about Mr. Washco's status. At first, Officer Galli allegedly told Mrs. Washco that her son was suspected of being involved in drug dealing. After Mrs. Washco heard her son call out to her at the police station, Officer Galli supposedly changed his story, claiming that Mr. Washco had no right to contact his family because he was not being held on criminal charges. The complaint then states that the officer terminated the conversation, and that Mrs. Washco did not see her son until the next morning.

The defendants have moved for dismissal of all counts in the complaint. Each of their objections is discussed below.

**1)** *John Washco's § 1983 Punitive Damages Claim*

■ In the plaintiffs' original complaint, Mr. Washco claimed punitive damages against all of the defendants, including the Darby police department. Defendants argue and plaintiffs acknowledge that the Supreme Court's decision in *City of Newport v. Fact Concerts,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), bars punitive damage claims against municipalities and their agencies. Plaintiffs' amended complaint still includes a punitive damages claim, but only against the individually named defendants. This claim may be pursued—*Fact Concerts* does not bar claims for punitive damages against government officials for knowing and malicious violations of a plaintiff's constitutional rights. *See Fact Concerts,* 453 U.S. at 267, 101 S.Ct. at 2759–60; *Buskirk v. Seiple,* 560 F.Supp. 247, 251 (E.D.Pa.1983). Therefore, plaintiffs may proceed on count I as amended.

**2)** *John Washco's Tort Claims*

■ In counts II, III, and IV of the amended complaint, John Washco sets forth various pendent tort claims, including intentional infliction of emotional distress, false imprisonment, and invasion of privacy. The defendants argue that these claims are barred under Pennsylvania's Political Subdivision Torts Claims Act, 42 Pa. Cons.Stat.Ann. §§ 8541–8564 (Purdon 1982). Under the act, a municipality and its employees are immune from liability for negligent conduct unless the conduct complained of falls into one of eight enumerated exceptions. *See* 42 Pa.Cons.Stat.Ann. § 8542(b) (Purdon 1982). Defendants contend and plaintiffs acknowledge that none of the conduct alleged in counts II, III, or IV falls into any of the act's exceptions.

Municipal employees may lose their immunity, however, by engaging in acts which constitute crimes, actual fraud, actual malice, or willful misconduct. *See* 42 Pa.Cons.Stat.Ann. § 8550 (Purdon 1982). Mr. Washco argues that if his allegations in counts II, III, and IV are established at trial, the verdict in his favor would be a judicial determination of willful misconduct on the part of the individual defendants charged with each count. Such a determination, it has been held, would strip the defendant officials of their statutory immunity. *See Dobson v. Green,* 596 F.Supp. 122, 125 (E.D.Pa.1984); *La Plant v. Frazier,* 564 F.Supp. 1095, 1098 (E.D.Pa.1983); *Buskirk v. Seiple,* 560 F.Supp. 247, 252 (E.D.Pa.1983).

Under the cited cases the defendants would not be immune from liability if Mr. Washco proves his allegations of intentionally tortious conduct at trial. Mr. Washco will be allowed to proceed, therefore, on all three counts.

### 3) *Maryann Washco's Claim*

■ Finally, defendant Galli argues that Maryann Washco's claim for intentional infliction of emotional distress should be dismissed. Mrs. Washco does not claim that Officer Galli violated any of her constitutional rights; the only claim she presents is a state tort claim based on what she witnessed of Officer Galli's alleged mistreatment of her son. Given the admitted lack of diversity between Mrs. Washco and Officer Galli, it is argued that her claim should be dismissed.

Mrs. Washco acknowledges that, as a general matter, a federal court would have no jurisdiction to adjudicate her claim. She contends, however, that the court may exercise pendent jurisdiction over her tort action because it and her son's civil rights claim arise from a common nucleus of operative fact. Plaintiff argues not only that this court has constitutional power to hear her claim, but also that litigating her case in this forum would neither violate the polices served by § 1983 nor disserve the prudential considerations which counsel against the exercise of pendent jurisdiction in certain cases.

Mrs. Washco relies on *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1975), as support for her jurisdictional argument. The plaintiff in *Aldinger* had been employed by Spokane County, Washington, as a clerical worker. After being discharged from that position, Ms. Aldinger filed a § 1983 claim for damages and equitable relief against various Spokane County officials for violations of her constitutional rights under the first, ninth, and fourteenth amendments. She also brought a § 1983 claim and state tort claims against the county itself. *See id.* at 3–5, 96 S.Ct. at 2415–2416. The district court determined that Ms. Aldinger's complaint did not state a cognizable federal claim against the county; having dismissed that claim, the district court went on to dismiss the state tort claims, concluding that it lacked subject matter jurisdiction to adjudicate them.[1] The Ninth Circuit, relying in part on its earlier opinions on the scope of pendent-party jurisdiction authorized by *Gibbs v. United Mine Workers,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), affirmed the district court.[2]

---

**1.** At the time, *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), barred claims for damages or for equitable relief under § 1983 against cities and municipal corporations. The Supreme Court abandoned *Monroe's* and *City of Kenosha's* approach to municipal liability in *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell,* the Court held that municipalities were amenable to suit under § 1983 for constitutional violations that are implemented by or executed pursuant to a regulation, ordinance, or policy enacted by the municipality's officers, or violations committed pursuant to governmental custom, even if the custom has not been formally approved. *See id.* at 690–91, 98 S.Ct. at 2035–2036.

**2.** In an earlier opinion, the Ninth Circuit had concluded that *Gibbs,* the Supreme Court's seminal case on pendent jurisdiction, did not allow for pendent-party jurisdiction of any sort. *See Hymer v. Chai,* 407 F.2d 136 (9th Cir.1969). The Circuit court refused to reconsider its earlier rejection of pendent-party jurisdiction in *Hymer,* because in its view plaintiff Aldinger's claim presented the weakest rationale for the exercise of pendent jurisdiction. The Ninth Circuit

The Supreme Court affirmed the Ninth Circuit. It determined that plaintiff's state claim against the county raised an issue not considered in *Gibbs,* namely: "whether a non-federal claim could ... be the basis for joining a party over whom no independent basis for federal jurisdiction exists, simply because the claim could be derived from the 'common nucleus of operative fact' giving rise to the dispute between the parties to the federal claim." *Aldinger,* 427 U.S. at 9, 96 S.Ct. at 2418. The Court decided not to formulate any "general, all-encompassing jurisdictional rule" regarding the exercise of pendent-party jurisdiction, but focused on what it viewed as the factual and legal differences between the type of pendent jurisdiction authorized in *Gibbs*—basically what we now consider somewhat ordinary exercises of pendent jurisdiction over the state-based claims of parties to a lawsuit based primarily on federal law—and the pendent-party questions raised in *Aldinger. See Aldinger,* 427 U.S. at 13–14, 96 S.Ct. at 2419–2420.

Fundamental to the Court's analysis in *Aldinger* was what it perceived as the essential legal difference between ordinary pendent jurisdiction and pendent-party jurisdiction. In determining whether the joinder of an otherwise unreachable party should be accomplished through pendent jurisdiction, the Supreme Court concluded that courts should consider "whether by virtue of the statutory grant of subject-matter jurisdiction, upon which [plaintiff's] principal claim against the [defendant] rests, Congress has addressed itself to the *party* as to whom jurisdiction pendent to the principal claim is sought." *Aldinger,* 427 U.S. at 16, 96 S.Ct. at 2421 (emphasis in original). In other words, the courts are to deduce, through an examination of relevant statutes, "whether Congress wanted to grant this sort of jurisdiction to federal courts." *Id.* at 17, 96 S.Ct. at 2421–2422.

Applying this analysis, the Court held that Congress had declined by implication to extend federal jurisdiction over municipal corporations like Spokane County. The Court based its holding on "a fair reading of the language used in § 1343, together with the scope of § 1983," which it interpreted as barring the use of pendent-party jurisdiction to accomplish the joinder of municipal corporations—parties that, according to the prevailing interpretation of the statute, Congress had explicitly excluded from liability.[3] Stated another way, the Court viewed Ms. Aldinger's effort to join the county as a pendent party to her federal action as an unwarranted attempt to expand the class of defendants who were potentially subject to the federal court's jurisdiction under § 1343(a)(3). In holding as it did, the Supreme Court concluded that the lower federal courts should not use their power of pendent jurisdiction to facilitate such an expansion.

At least in terms of its posture, the instant case presents a situation different from the one faced by the Supreme Court in *Aldinger.* In this case, Mr. Washco has brought a valid federal civil rights claim against a group of defendants. The proposed pendent party is Mrs. Washco, who seeks to litigate a state claim against a non-diverse defendant already named in her son's lawsuit. It is therefore not an *unwilling defendant* who would be brought into court through the proposed exercise of pendent jurisdiction, but a *willing plaintiff* who, under normal circumstances, would not be entitled to a federal forum. Because the two claims arise from a common nucleus of operative fact, the court has constitutional power under Article III to hear Mrs. Washco's claim—assuming that Congress intended such an exercise of jurisdiction—and the proposed joinder in some circumstances could serve judicial economy.

reached this conclusion for several reasons, one of them being that "federal courts should be wary of extending court-created doctrines of jurisdiction to reach parties who are expressly excluded by Congress from liability, and hence federal jurisdiction, in the federal statute sought to be applied to the defendant in the main claim." *Aldinger,* 427 U.S. at 5–6, 96 S.Ct. at 2416–2417 (discussing *Aldinger v. Howard,* 513 F.2d 1257, 1259–62 (9th Cir.1975)).

3. This is, of course, no longer the case since *Monell,* 436 U.S. at 660–61, 98 S.Ct. at 2020–2021.

Despite these differences in posture, however, it is fair to conclude that Congress did not authorize the federal courts to hear claims like Mrs. Washco's. The remedy provided by § 1983 is available to a specific class of plaintiffs—those who have suffered deprivations of their constitutional rights under color of state law. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1960). In order to recover under the statute, a plaintiff must establish that there was a violation of the underlying constitutional right and that the defendant was cloaked with state authority. *See Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1985). The Supreme Court has expressed its interest in clearly delineating the scope of § 1983, so that its remedy—and, by implication, access to the federal courts—will not be available to plaintiffs whose injuries are not of a constitutional dimension.[4]

This interpretation of § 1983's scope is consistent with, in the *Aldinger* majority's words, "the well-established principle that federal courts, as opposed to state trial courts, are courts of limited jurisdiction marked out by Congress." *Aldinger*, 427 U.S. at 15, 96 S.Ct. at 2420–2421. The federalism concerns underlying this principle in large part explain other Supreme Court decisions that require strict adherence to jurisdictional prerequisites that restrict the reach of the federal courts with respect to matters traditionally governed by state law. *See, e.g., Owen Equipment v. Kroeger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 2402–2403, 57 L.Ed.2d 274 (1978) (no pendent-party jurisdiction over a plaintiff's claims against a third-party defendant where exercise of jurisdiction would destroy diversity between all plaintiffs and all defendants); *Zahn v. International Paper*, 414 U.S. 291, 300, 94 S.Ct. 505, 511, 38 L.Ed.2d 511 (1973) (all members of a class certified under rule 23 must meet the jurisdictional limit in diversity cases).

The use of pendent-party jurisdiction as a general matter to join plaintiffs like Mrs. Washco in § 1983 cases would expand significantly the class of plaintiffs who have access to the federal courts through civil rights actions. Under Mrs. Washco's interpretation of the statute, § 1343 would allow a court to adjudicate any and all claims asserted by any purported plaintiff simply because they arose from the common nucleus of operative fact that produced one plaintiff's legitimate civil rights claim. Such an interpretation of § 1343 would not only expand the set of claims that could be asserted in § 1983 actions, but it would also significantly expand federal judicial intervention in areas of state law. Such an expansion of federal judicial authority would seem at odds with the Supreme Court's reading of Congressional intention in *Aldinger*.

Accordingly, defendant Galli's motion to dismiss count V will be granted. As to the remainder of the amended complaint, defendants' motion will be denied and plaintiff John Washco will be allowed to proceed on counts I through IV.

---

**4.** *Cf. Daniels,* 474 U.S. at 332–33, 106 S.Ct. at 665–66 (expressing concern that § 1983's constitutional remedy and the fourteenth amendment's due process clause should not be used to supplant state tort doctrine); *Paul v. Davis,* 424

U.S. 693, 699–701, 96 S.Ct. 1155, 1159–1161, 47 L.Ed.2d 405 (1976) (Court resisting creation of a "font of tort law to be superimposed [upon the states]" through certain applications of the due process clause).