Mrs. Ernestine **SPENCER**, individually as the mother of Samuel Benjamin Spencer, III, deceased, and as Administratrix of the estate of Samuel Benjamin Spencer, III, Mr. Samuel B. Spencer, Jr., father of Samuel Benjamin Spencer, III, deceased, Plaintiffs,

v.

Frank **CASAVILLA**, Frank D'Antonio, Cosmo Muriale, Douglas Mackey, John Does, Defendants.

No. 87 Civ. 3424 (CSH).

United States District Court, S.D. New York.

July 27, 1989.

James I. Meyerson, New York City, for plaintiffs.

Frank Casavilla, pro se.

Frank D'Antonio, pro se.

Cosmo Muriale, pro se.

Douglas Mackey, pro se.

John Does, pro se.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiffs Ernestine Spencer and Samuel B. Spencer, Jr. are the parents of the late Samuel Benjamin Spencer, III (hereinafter "plaintiffs' decedent"). The complaint alleges that on May 28, 1986 defendants assaulted and beat plaintiffs' decedent, the incident occurring in the vicinity of Surf and Mermaid Avenues and 20th Street, Kings County. Plaintiffs' decedent died later that day at Coney Island Hospital. Plaintiffs' decedent was black. The defendants are white.

The District Attorney of Kings County prosecuted the defendants on criminal charges. Defendant Mackey testified for the prosecution and was convicted on a plea of guilty to attempted manslaughter in the first degree. Defendant Casavilla was convicted of murder in the second degree and sentenced to 15 years to life imprisonment. Defendant Muriale was convicted of manslaughter in the first degree and sentenced to eight and a third to 25 years imprisonment. Defendant D'Antonio was convicted of assault in the third degree and sentenced to one year imprisonment.

Plaintiffs commenced this civil action against these four defendants and "John Does" (defendants never further identified) to recover compensatory and punitive damages arising out of this dreadful and tragic incident. The defendants are currently imprisoned or are otherwise indigent. None has retained counsel to conduct the defense of this civil action.

Plaintiffs allege federal question subject matter jurisdiction. Their predicates for doing so are found in the civil rights statutes, namely, 42 U.S.C. §§ 1981, 1985(3), and 1986. Plaintiffs allege claims under those sections. In addition, state law claims are alleged under pendent jurisdiction. At a status conference the Court raised the question *sua sponte* whether viable federal claims were pleaded. Counsel for plaintiffs has submitted a memorandum in support of federal jurisdiction. Defendants, unrepresented by counsel, have submitted no authorities. The Court has considered the brief on behalf of plaintiffs and conducted independent research.

I.

*§ 1981*

§ 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

This statute, derived in part from the Civil Rights Act of 1866, "has roots in the Thirteenth as well as the Fourteenth Amendment" to the United States Constitution. *General Building Contractors Association, Inc. v. Pennsylvania*, 458 U.S. 375, 390, 102 S.Ct. 3141, 3149, 73 L.Ed.2d 835 (1982). To state a claim under the Fourteenth Amendment, unlike the Thirteenth Amendment, a plaintiff must allege state involvement of some kind. *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th

Cir.1972). Defendants at bar are private persons who did not act in conjunction with public officers. Accordingly the question arises whether § 1981, read in conjunction with the Thirteenth Amendment, covers the private acts alleged in the complaint.

The first civil right enumerated in § 1981 is that "to make and enforce contracts." Most acts brought against private persons under § 1981 deal with contracting. The Supreme Court's most recent decision in that area is *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), a ruling this Term which narrowed the scope of § 1981 contractual relief. The Court held that racial harassment on the job does not fall within § 1981: "Section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the *making and enforcement of contracts.*" *Id.* 109 S.Ct. at 2372.

The case at bar does not involve contractual rights. But § 1981 goes on to enumerate other rights. In *Mahone v. Waddle,* 564 F.2d 1018, 1026–27 (3rd Cir.1977), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978), the Third Circuit referred to them as the "equal benefit" and "like punishment" clauses, as opposed to the right "to make and enforce contracts." The plaintiffs in *Mahone* alleged that municipal police officers, motivated by racial bias, verbally and physically abused them, falsely arrested them, and gave false testimony against them. Defendants argued that a broad reading of § 1981 to embrace such conduct would create a § 1981 action in federal court "whenever a white man strikes a black in a barroom brawl", 564 F.2d at 1029. The Third Circuit rejected that argument, on the basis of a "fundamental distinction" between the rights involved:

> The right "to make and enforce contracts" necessarily is concerned with relations between private individuals. It is usually with another individual, not the state, that a black person would seek to make a contract; it is that other individual's racially motivated refusal to make a contract which can cause harm to the

black person. The right "to make and enforce contracts" can thus be infringed by private individuals and it is appropriate that private individuals be held liable for that infringement.

> The words "full and equal benefit of all *laws and proceedings* for the security of persons and property" (emphasis supplied), on the other hand, suggest a concern with relations between the individual and the state, not between two individuals. The state, not the individual, is the sole source of law, and it is only the state acting through its agents, not the private individual, which is capable of denying to blacks the full and equal benefit of the law. Thus, while private discrimination may be implicated by the contract clause of section 1981, the concept of state action is implicit in the equal benefit clause. The like punishment clause may be read in the same way.

564 F.2d at 1029.

Two district courts have followed this reasoning by the Third Circuit and held that state action is necessary to support a claim under the equal benefits or like punishment clauses of § 1981. *Eggleston v. Prince Edward Volunteer Rescue Squad,* 569 F.Supp. 1344, 1353 (E.D.Va.1983), *aff'd, without opinion,* 742 F.2d 1448 (4th Cir. 1984); *Williams v. Northfield Mt. Hermon School,* 504 F.Supp. 1319 (D.Mass.1981). *But see Hawk v. Perillo,* 642 F.Supp. 380, 390 (N.D.Ill.1985) (assault by white males upon black males; district court regarded the Third Circuit's *Mahone* analysis as "entirely unnecessary to the court's conclusion", declined to follow it, and held that § 1981 prohibits "private as well as official acts of discrimination" in non-contractual areas as well).

▮ Neither the Supreme Court nor the Second Circuit appear to have squarely addressed this particular issue. I find myself in agreement with the Third Circuit's analysis in *Mahone,* and accordingly conclude that the complaint at bar, involving private conduct of a non-contractual nature, does not allege a viable claim under § 1981. That conclusion is based in part

upon considerations which underlie plaintiff's alternative jurisdictional basis, § 1985(3), to which I now turn.

## II.

### § 1985(3)

42 U.S.C. § 1985(3) provides in pertinent part:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

To state a cause of action under § 1985(3) a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of right or privilege of a citizen of the United States. *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586–87 (2d Cir.1988), *citing Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). § 1985(3) provides no substantive rights itself; instead, it "provides a remedy for violation of the rights it designates." *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979). However, as the Second Circuit observed in *Traggis* at 587: "Determining which rights the statute 'designates' ... is not always a simple matter." Clearly, § 1985(3) provides a remedy for conspiracies to deprive persons of their rights under the United States Constitution. "Less clear is the extent to which the statute remedies injuries resulting from private conspiracies to deprive persons or classes of persons of the equal protection, or equal privileges or immunities under, federal statutory law or state law." *Ibid.* In *Traggis*, the Second Circuit left that broader question for another day. *Id.* at 591.

In *Stevens v. Tillman*, 855 F.2d 394 (7th Cir.1988), the Seventh Circuit said that § 1985(3):

> ... addresses private acts—going "in disguise on the highway" is a reference to the M.O. of the Ku Klux Klan—yet condemns only deeds that "deprive" the victim of "the equal protection of the laws, or of equal privileges and immunities under the laws", something within the domain of government exclusively. The admixture of private and public action has befuddled courts ever since.

*Id.* at 403 (citing *Griffin v. Breckenridge, supra; Novotny, supra;* and *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983).

"It is hard", the Seventh Circuit observed after reflecting on these three Supreme Court cases:

> to come up with an enduring interpretation of such an opaque statute, when the Court tries on the one hand to avoid turning all state torts into federal offenses and on the other to give some content to a statute that if read naturally speaks only to state action and therefore duplicates § 1983.

*Id.* at 404.

In *Stevens v. Tillman* the Seventh Circuit, having considered the Supreme Court's three "contemporary cases", concluded that § 1985(3) reaches three kinds

of racially-motivated private conspiracies: (1) to deprive persons of rights secured to all by federal law; (2) to deprive persons of rights secured to all by state law, where the deprivation interferes with the exercise of a federally-protected right; and (3) to deprive persons of rights secured only against governmental action (such as the right of free speech), provided the defendants are either "state actors" or seeking to influence the state to act in a prohibited way. In each of these categories, the Seventh Circuit observed:

> The plaintiff must locate a right independently secured by state or federal law and then show (if only state law is at issue) that the offense deprives him of a right secured by a federal rule designed for the protection of all.
>
> *Ibid.*

And in derogation of the § 1985(3) claim in *Stevens v. Tillman* the court emphasized that:

> ... Stevens does not contend that Tillman violated any of her rights under state law (such as the right to be free from assault) for the purpose or with the effect of inducing her to surrender or refrain from exercising rights secured by federal law.

Where individuals acting under color of state law are charged with a civil rights conspiracy in violation of § 1983, the Second Circuit has noted that "a conspiracy allegation does not obviate the necessity of proving 'an actual deprivation of a constitutional right.'" *Dean Tarry Corp. v. Friedlander,* 826 F.2d 210, 213 (2d Cir. 1987), citing and quoting *Villaneuva v. McInnis,* 723 F.2d 414, 418 (5th Cir.1984).

In *Griffin v. Breckenridge, supra* the Supreme Court specifically cautioned "that [§ 1985(3) ] was meant to reach private action does not, however, mean that it was intended to apply to all tortious conspiratorial interference with the rights of others." The Court looked particularly to the legislative history rejecting the notion "that Congress had a right to punish an assault and battery when committed by two or more persons within a State." 403 U.S. at 101–02, 91 S.Ct. at 1797–98. The complaint in *Griffin v. Breckenridge* alleged a racially motivated assault which the Court held fell within § 1985(3); but the complaint specifically alleged that the conspirators' objectives were to deprive plaintiffs of their rights to free speech, assembly, association, and movement. In particular the complaint alleged that plaintiffs were driving their automobile through a county on the Mississippi–Alabama border, and that the conspirators wished to prevent plaintiffs from exercising their rights to travel on such roads, inspired by the erroneous belief that one of the plaintiffs was a worker for Black civil rights. To sustain a § 1985(3) claim, the Court considered it necessary to "identify a source of congressional power to reach the private conspiracy alleged by the complaint in this case", *id.* at 104, 91 S.Ct. at 1799, and located that power in the constitutionally protected right to interstate travel. *Id.* at 105, 91 S.Ct. at 1799. Addressing the sufficiency of the complaint, the court said:

> Under these allegations it is open to the petitioners to prove at trial that they had been engaging in interstate travel or intended to do so, that their federal right to travel interstate was one of the rights meant to be discriminatorily impaired by the conspiracy, that the conspirators intended to drive out-of-state civil rights workers from the State, or that they meant to deter the petitioners from associating with such persons. This and other evidence could make it clear that the petitioners had suffered from conduct that Congress may reach under its power to protect the right of interstate travel.

The complaint at bar contains no allegations implicating a federally created or protected right.

Comparable inquiries are made, and federally protected rights identified, in cases upon which plaintiffs at bar rely. In *Fisher v. Shamburg,* 624 F.2d 156 (10th Cir. 1980), a racially inspired assault took place outside a restaurant. Looking to the common law, the earlier civil rights statutes, and the more recent Title II of the Civil Rights Acts of 1964, the Tenth Circuit concluded that Congress had "defined the ra-

cially motivated denial of one's enjoyment of a place of public accommodation as a badge of slavery." *Id.* at 160. In *Hawk v. Perillo, supra,* the court divined in the complaint an allegation of violation of the right of interstate travel, 642 F.Supp. at 387 (although I am bound to say that, judging by the description of the facts in the opinion, the district judge was stretching the concept).

■ The complaint at bar alleges an outrageous and dreadful assault, perpetrated upon an innocent young man for racial reasons. But I cannot discern in the complaint allegations that defendants' conduct, clearly violative of the state law of assault and murder, also offended a federal constitutional or statutory rule designed for the protection of all. *Cf. Stevens v. Tillman, supra,* at 404 ("A cross-burning (trespass and assault) by the Klan is an example [of conduct reached by § 1985(3)] to the extent the threat of violence induces the targets to refrain from exercising federally-assured rights, such as the rights to travel, to associate or speak, and to vote."). By negative inference, in the absence of a conspiratorial objective to violate a federally-assured right, the action does not lie under § 1985(3). None is alleged here, nor reasonably could be.

*Conclusion*

In the area of private conduct, the limitations placed upon the scope of § 1985(3) conspiracies also militate in favor of the Third Circuit's analysis in *Mahone, supra,* limiting the scope of § 1981.

I conclude that the alleged conduct of these private persons, however heinous, does not give rise to viable federal claims. Whether the proper procedural ruling is to dismiss the action for want of federal subject matter jurisdiction or to find a sufficient invocation of jurisdiction and then dismiss the federal claims under Rule 12(b)(6), F.R.Civ.P., the result is that the complaint must be dismissed.[1]

1. The complaint also invokes 42 U.S.C. § 1986. That does not affect the result. No cause of action can arise under § 1986 unless there is also a cause of action under § 1985, since

The Clerk of the Court is directed to dismiss the federal claims (the first, second, third, fourth, seventh, and eighth causes of action) with prejudice, and to dismiss the pendent state law claims (fifth and sixth causes of action) without prejudice. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). No costs.

It is SO ORDERED.

§ 1986 "merely gives a remedy for misprision of a violation of 42 U.S.C. § 1985." *Williams v. St. Joseph Hospital,* 629 F.2d 448, 452 (7th Cir. 1980).