Todd M. **GRIER,** and Jocelyn E. Grier, a minor suing by Todd M. **GRIER,** her father and natural guardian, Plaintiffs,

v.

John **GALINAC,** et al., **Defendants.**

Civ. A. No. 1:CV–90–174.

United States District Court,
M.D. Pennsylvania.

April 17, 1990.

James H. Rowland, Jr., Harrisburg, Pa., for plaintiffs.

Frank J. Lavery, Jr., Marshall, Dennehey, Warner, Coleman & Goggin, Harrisburg, Pa., for defendants.

## MEMORANDUM

CALDWELL, District Judge.

The defendants, John Galinac, Roberta Pisle, and the Township of Swatara, have moved to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff, Todd M. Grier, instituted this action on behalf of himself and his minor daughter, Jocelyn E. Grier, after he was allegedly stopped and detained at gunpoint by defendants Galinac and Pisle, police officers for the defendant Township. Count I of the complaint asserts a claim on behalf of Todd M. Grier under 42 U.S.C. § 1981. Count II is a pendent state tort claim on behalf of Jocelyn Grier for emotional distress.

The complaint alleges that on or about October 10, 1989, Todd Grier, a black male, and his two year old daughter were in his car attempting to start it with the aid of two white neighbors. (complaint, ¶ 6). "[A]s the plaintiff, Todd M. Grier, emerged from his car he was arrested[1] and searched by the defendants, Galinac and Pisle, at gunpoint, and deprived of his constitutional rights without being told why he was being so treated." (Id., ¶ 7) (brackets added). Plaintiff was "subsequently released as having been mistakenly identified as an alleged bank robber." (Id., ¶ 8). But the individual defendants:

---

1. It is unclear whether plaintiff was actually arrested by the defendants. Although the complaint does allege that Grier was arrested, (complaint, ¶ 7), plaintiff's opposition brief at page 13 conversely states that Grier was "never formally charged or taken in for questioning." This uncertainty can be cleared up in an amended complaint.

separately, in concert, and as agents for the defendant, Township of Swatara, acted outside the scope of their authority and acted willfully, knowingly, and purposely with the specific intent to deprive the plaintiff ... of his right to freedom from:

> (a) being detained and threatened because he is a black person;
>
> (b) illegal seizure of his person;
>
> (c) intimidation, physical abuse and coercion.

(*Id.*, ¶ 9). Plaintiffs buttress these allegations by averring that the suspect, while also black, "[did] not fit the description of the plaintiff." (*Id.*, ¶ 8). The theory of liability against the Township is respondeat superior. (*Id.*, ¶¶ 4 and 5). The minor plaintiff's state law claim for emotional distress is based upon observing the police officers' treatment of her father. (*Id.*, ¶¶ 12 and 13). Both counts seek $50,000 in compensatory damages, as well as punitive damages against each defendant.

■ Initially, we will address on our own motion a jurisdictional issue presented by Jocelyn Grier's pendent state law claim. While the claim is brought on behalf of Jocelyn by her father, the cause of action is entirely her own. *See Apicella v. Valley Forge Military Academy*, 630 F.Supp. 20 (E.D.Pa.1985) and cases cited therein. Since it is a state claim, we cannot, of course, exercise federal question jurisdiction over it. Diversity jurisdiction also appears unlikely. The plaintiffs allege that they are residents of Pennsylvania. (complaint, ¶ 3). The Township of Swatara would be considered a citizen of Pennsylvania for diversity purposes. *See District of Columbia v. Owens–Corning Fiberglas Corp.*, 604 F.Supp. 1459 (D.D.C.1985). Hence, complete diversity would be lacking. Additionally, its employees would most likely be residents as well.

We also think that the Supreme Court's recent decision in *Finley v. United States*, — U.S. —, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), forecloses any reliance upon pendent party jurisdiction. In *Finley*, the Court stated, in the context of an attempt to exercise pendent party jurisdiction over certain nonfederal defendants in a Federal Tort Claims Act case against the United States, that the propriety of such jurisdiction, aside from any requirements imposed by *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), must at least take into account "the posture in which the nonfederal claim is asserted and ... the specific statute that confers jurisdiction over the federal claim ..." — U.S. at —, 109 S.Ct. at 2007, 104 L.Ed.2d at 603 (quoting *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274, 282 (1978)). The Court stated that the "most significant element of 'posture'" in *Finley* was "that the added claims involve added parties over whom no independent basis of jurisdiction exists." — U.S. at —, 109 S.Ct. at 2007–08, 104 L.Ed.2d at 603. Examining the jurisdictional section for the Federal Tort Claims Act, 28 U.S.C. § 1346(b), the Court also decided that the section provided jurisdiction only for claims brought against the United States alone. It therefore concluded that pendent party jurisdiction could not be exercised over the other defendants.

*Finley* indicates that we have no jurisdiction over Jocelyn Grier's claim. The posture of her claim does not involve an independent basis of jurisdiction. Additionally, the jurisdictional statute for her father's federal claim, 28 U.S.C. § 1343(a)(3), provides jurisdiction, in pertinent part, only for claims alleging a deprivation of rights secured by either the federal constitution or federal statutes providing for equal rights. Accordingly, Jocelyn Grier's state law claim for intentional infliction of emotional distress must be dismissed for lack of jurisdiction. *See Washco v. Darby Borough Police Department*, 688 F.Supp. 1026 (E.D. Pa.1988) (pendent party jurisdiction could not be exercised over mother's claim for intentional infliction of emotional distress when section 1343 and 42 U.S.C. § 1983 dealt only with violations of federal rights). *See also Birkinshaw v. Armstrong World Industries, Inc.*, 715 F.Supp. 126 (E.D.Pa. 1989).

■ Our inability to exercise jurisdiction over the minor plaintiff's state law claim raises the issue of whether we should exercise pendent claim jurisdiction over her

father's claim for the medical expenses incurred in treating her emotional injuries. His claim in that regard is independent of his daughter's. *See Apicella, supra.* Normally, we would be inclined to exercise jurisdiction over his claim since it does arise from a common nucleus of operative facts with his section 1981 claim. *See Gibbs, supra.* But we are not obligated to do so, and we may refuse to exercise jurisdiction in our discretion. *See Sparks v. Hershey,* 661 F.2d 30 (3d Cir.1981) (per curiam). We will not exercise jurisdiction here for the following reasons. First, although Todd Grier's claim is independent of his daughter's, it does depend solely upon the merits of her claim, a claim we have no jurisdiction over and which must be tried in a state court if plaintiffs wish to pursue it. Second, although his state law claim does share a common nucleus of operative facts with his section 1981 claim, the facts of each claim would not substantially overlap. His federal claim can be tried without hearing evidence on the merits of his daughter's claim for emotional distress. Judicial economy and convenience therefore counsel against the exercise of jurisdiction. Finally, while we believe the Third Circuit in *Williams v. Guzzardi,* 875 F.2d 46 (3d Cir.1989) has given us sufficient guidance to deal with a claim under Pennsylvania law for intentional infliction of emotional distress—if we were to exercise jurisdiction—we think that *Williams* also indicates that Pennsylvania courts consider the law in this area unsettled. Hence, comity dictates that we leave this claim to the state courts. *See Duva v. Bridgeport Textron,* 632 F.Supp. 880 (E.D. Pa.1985). We therefore decline to exercise jurisdiction over the father's claim for medical expenses arising from his daughter's emotional distress.[2] We turn now to the remaining claim in this action, Todd M.

Grier's federal claim based upon 42 U.S.C. § 1981.

Defendants initially argue that the claim does not fall within the scope of 1981 as recently delineated by the Supreme Court in *Patterson v. McLean Credit Union,* — U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), because it is not based upon the violation of the right to make or enforce a contract.[3] This argument no doubt follows from language in *Patterson* where, immediately after quoting section 1981 in full, the Supreme Court stated that the "most obvious feature of the provision is the restriction of its scope to forbidding discrimination in the 'mak[ing] and enforce[ment]' of contracts alone. When an alleged act of discrimination does not involve the impairment of one of these specific rights, § 1981 provides no relief." *Id.* at ——, 109 S.Ct. at 2372, 105 L.Ed.2d at 150. (brackets in original). We ourselves embraced this interpretation. *See Hayes v. Community General Osteopathic Hospital,* 730 F.Supp. 1333 (M.D.Pa.1990). Other courts have apparently done likewise. *See Thompson v. Johnson & Johnson Management Information Center,* 725 F.Supp. 826 (D.N.J.1989); *Leong v. Hilton Hotels Corp.,* 1989 WL 116880 (D. Hawaii); *Carter v. O'Hare Hotel Investors,* 1989 WL 153338 (N.D.Ill.1989) ("Section 1981 only covers racial discrimination in the making and enforcement of contracts"). All of these cases, however, including *Patterson,* involved the direct terms and conditions of employment. Post–*Patterson* cases going beyond those circumstances have concluded that section 1981 protects more than certain contractual rights. *See Arnold v. Board of Education,* 880 F.2d 305 (11th Cir.1989) (section 1981 is not confined to contractual matters although it is

---

**2.** If plaintiffs do wish to try all of their claims together, they can sue in the state court system. State courts have concurrent jurisdiction over section 1981 claims. *See Bradshaw v. General Motors Corp.,* 805 F.2d 110 (3d Cir.1986). The same is true for section 1983. *Bennett v. White,* 865 F.2d 1395 (3d Cir.1989).

**3.** Section 1981 reads as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

most often invoked in that context); *Fowler v. McCrory Corp.*, 727 F.Supp. 228 (D.Md.1989) (*Patterson* involved only two of the four rights enumerated in 1981); *Spencer v. Casavilla*, 717 F.Supp. 1057 (S.D.N.Y.1989) (holding that 1981 extends beyond contractual rights). We must agree with this interpretation of section 1981, a position adopted by the Third Circuit in a pre-*Patterson* case, *Mahone v. Waddle*, 564 F.2d 1018 (3d Cir.1977), cited by the plaintiff in support of his section 1981 claim.

In *Mahone* the Third Circuit held, based upon their plain enumeration in the statute, that section 1981 encompasses other rights besides contract. Addressing an allegedly racially motivated arrest far more egregious, but still analogous to the case at bar, the court in *Mahone* refused to restrict section 1981 to contractual rights alone. The court stated:

> The section takes the form of an enumeration of diverse rights.... To read the language of the statute as applying only to the right to contract ignores the clear and vital words of the majority of its provisions. Despite the sparsity of precedent, a natural and common sense reading of the statute compels the conclusion that Section 1981 has broad applicability beyond the mere right to contract.

*Id.* at 1027–28.

The court referred to the pertinent clauses of section 1981 as the "equal benefit" and "like punishment" clauses, and stated:

> Plaintiffs have alleged that the City's police officers, clothed with the authority of the City and the state and motivated by racial bias, verbally and physically abused them, falsely arrested them, and gave false testimony against them. It seems to us that plaintiffs have in effect alleged that because they are black they were subjected to officially inflicted "punishment, pains, [and] penalties" other than those to which white persons are subject. In alleging that because of their race they were arrested without probable cause or warrant and that they were convicted by false testimony of crimes they did not commit, plaintiffs have in effect charged that the City's officers denied them the same "full and equal benefit of ... laws and proceedings for the security of persons ... as is enjoyed by white persons." We therefore believe that the facts alleged fall within the broad language of both the equal benefits and like punishment clauses of section 1981.

*Id.* at 1028 (footnote omitted) (brackets in original).

*Mahone* has been followed by other courts in interpreting the scope of section 1981. *See Arnold, supra; Spencer, supra; Mendez v. Rutherford*, 687 F.Supp. 412 (N.D. Ill.1988). It supports plaintiff's assertion of a section 1981 claim here that he would not have been stopped and questioned if he had been white.

Defendants also argue that Todd Grier has failed to show an intentional discriminatory purpose on the part of the defendant officers and that the complaint is too vague and conclusional. Plaintiff contends that the allegations of the complaint, reiterated in pertinent part at the beginning of this memorandum, are sufficient to withstand defendants' motion to dismiss. We agree with defendants that the complaint is too vague. A conclusory allegation that the officers acted improperly because Grier did not fit the description of the suspect is insufficient. Plaintiff, however, has made additional averments in his brief which provide more detail. Plaintiff argues that he did not fit the description because he was lighter skinned than the suspect and shorter by about nine inches. If these allegations are combined with those of the complaint that plaintiff was in the company of neighbors who were not investigated, and that his two year old daughter was with him, we believe that the complaint would be specific enough and would also raise an inference of racial animus sufficient to survive a motion to dismiss.[4] The additional allegations must be

---

**4.** Qualified immunity, also argued by defendants, can be dealt with at a later stage of these proceedings.

placed in the complaint, however, so plaintiff will be required to amend. Additionally, the complaint should make clear whether plaintiff is relying upon a violation of fourth amendment rights, U.S. Const. amend. IV, as well as section 1981.

 Defendants also contend that the action must be dismissed against the Township of Swatara because its liability is predicated upon respondeat superior, an insufficient basis for imposing liability upon a municipality in a civil rights action. *See Stoneking v. Bradford Area School District*, 882 F.2d 720 (3d Cir.1988). Plaintiff has no response to this argument. It seems that prior to the Supreme Court's recent decision in *Jett v. Dallas Independent School District*, — U.S. —, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), respondeat superior was a basis upon which liability could be imposed in a section 1981 action. *See, e.g., Mahone, supra.* But the Court in *Jett* rejected that position, holding that section 1981 was enforceable solely through 42 U.S.C. § 1983 and hence that a claim against a municipality had to satisfy the well established requirement that there be a custom or policy. Accordingly, respondeat superior will not suffice for the claim against the Township and the action will be dismissed against that defendant.[5]

Defendants next attack the claim for punitive damages. The argument is moot as to the Township since it will be dismissed from this case, although we agree with defendants that punitive damages are not recoverable against a municipality under section 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Plaintiffs allege that punitive damages should be assessed against the individual defendants because they acted "willfully, knowingly, and purposely with the specific intent" to deprive Grier of his constitutional rights. (complaint, ¶ 9). Defendants contend that this allegation is insufficient to plead a punitive damage claim against them. We disagree. We think that the claim, in the context of the other allegations, has been adequately pled. *See Savarese v. Agriss*, 883 F.2d 1194 (3d Cir. 1989).

We will issue an appropriate order.

## ORDER

AND NOW, this 17th day of April, 1990, upon consideration of the defendants' motion to dismiss, it is ordered that:

1. The motion is granted as to defendant, Township of Swatara, and that defendant is hereby dismissed from this action.

2. The motion is granted as to the remaining defendants but plaintiff, Todd M. Grier, is hereby given leave to file an amended complaint setting forth with specificity his section 1981 claim, and any other civil rights claim he wishes to assert, in conformity with the accompanying memorandum.

3. Plaintiff, Jocelyn Grier's, claim for intentional infliction of emotional distress and Todd Grier's related state law claim are dismissed without prejudice as to all defendants.

4. Todd Grier shall file his amended complaint by May 2, 1990.

---

5. Plaintiffs have not cited section 1983 in their complaint but plaintiff, Todd Grier, can cure that defect in an amended complaint.