Ernestine SPENCER, individually as the mother of Samuel Benjamin Spencer II, deceased, and as Administratrix of the estate of Samuel Benjamin Spencer, III, Samuel B. Spencer, Jr., father of Samuel Benjamin Spencer, III, deceased, Plaintiffs,

v.

Frank CASAVILLA, Frank D'Antonio, Cosmo Muriale, and Douglas Mackey, Defendants.

No. 87 CV 3424 (KMW).

United States District Court, S.D. New York.

Dec. 7, 1993.

James I. Meyerson, New York City, for plaintiff.

Louis C. Pulvermacher, New York City, for Muriale.

Frank Casavilla, pro se.

Douglas Mackey, pro se.

## AMENDED MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Prior to trial of this action for state law assault and federal civil rights claims, defendants moved to dismiss the plaintiffs' federal causes of action. The court held those motions in abeyance because the parties requested additional time to prepare their legal arguments. At trial, the jury returned a verdict in favor of the plaintiffs on both the state and the federal causes of action. The

court now considers defendants' motion to set aside the verdict on the federal claims, and other issues raised in the parties' post-trial briefs. For the reasons stated below, the court grants defendants' motion to vacate the jury's verdict on plaintiff's federal causes of action. The court holds that defendants are jointly and severally liable for compensatory damages awarded by the jury on the state claim, and are individually liable for punitive damages. Finally, the court vacates the judgment against deceased defendant D'Antonio and dismisses the action against him on all counts.

## BACKGROUND

In the early morning hours of May 28, 1986, the four defendants, young white men, participated in brutally beating and stabbing to death Samuel Spencer III ("Spencer"), a young black man. Spencer, who usually resided in his parents' Yonkers, New York home, was visiting his sister on Coney Island, Brooklyn. Some time after midnight, he left his sister's home and went to Nathan's restaurant, where defendants also had gone at that hour. There was some disagreement at trial as to the origin of the dispute between defendants and Spencer. Taking the evidence in the light most favorable to the plaintiffs, it appears that the altercation began when defendant Douglas Mackey, arriving by car to meet the other defendants, saw Spencer on a bicycle, looking into the parked, empty car of a friend of Mackey's who had already arrived at the restaurant. Mackey confronted Spencer, and, after heated words were exchanged, Spencer fled on his bicycle as defendants chased him by car through the streets of Coney Island. When defendants caught up with Spencer, they repeatedly beat and stabbed him. As he stabbed Spencer, defendant Casavilla said, "Die, nigger." Spencer was taken to Coney Island Hospital, where he died a few hours later.

All four of the defendants were charged with state law crimes arising from the assault and murder of Spencer, and they all either pleaded guilty to or were convicted of various crimes.[1] While the criminal case was pending, Spencer's parents filed this lawsuit, alleging deprivation of Spencer's civil rights under 42 U.S.C. §§ 1981, 1985(3), and 1986, as well as pendent state law assault claims. Plaintiffs sought compensatory and punitive damages on behalf of Spencer for his pain and suffering, and on behalf of themselves for loss of their son. Judge Haight, who was originally assigned the case, placed it on the suspense calendar until the final disposition of the state's criminal case. After restoring it to the calendar and noting that all of the defendants were proceeding *pro se*, he *sua sponte* raised the issue of federal jurisdiction over the action. In a decision reported at 717 F.Supp. 1057 (S.D.N.Y.1989) (*Spencer I* ), he held that although the tragedy suffered by plaintiffs gave them a strong state law assault claim against defendants, plaintiffs had not stated a claim for federal civil rights violations. Regarding plaintiffs' claim pursuant to 42 U.S.C. § 1981, Judge Haight held that state action—which was indisputably absent in this case—was necessary to state a claim under the "equal benefit" or the "like punishment" clause of the section. *Id.* at 1059. As for plaintiffs' claim that defendants violated 42 U.S.C. § 1985(3), Judge Haight pointed to longstanding law that a § 1985(3) claim must be predicated on the violation of a federal right. Because the right to be free from assault—the only right the complaint appeared to allege had been violated—arose under state law, plaintiffs could not state a § 1985(3) claim.[2] *Id.* at 1060–62. Judge Haight consequently dismissed plaintiffs' claim for lack of federal jurisdiction, or, alternatively, failure to state a claim for which relief may be granted. *Id.* at 1062.

---

**1.** Defendant Mackey pleaded guilty to attempted manslaughter in the first degree and cooperated with the prosecution. Defendant Casavilla pleaded guilty to second-degree murder and was sentenced to 15 years to life imprisonment. Defendant Muriale pleaded guilty to first degree manslaughter and was sentenced to 8⅓ to 25 years in prison. Defendant D'Antonio was convicted of third-degree assault after a jury trial, and was sentenced to one year's imprisonment. Defendant D'Antonio is now deceased.

**2.** Judge Haight also held that, because § 1986 "merely gives a remedy for misprision of a violation of 42 U.S.C. § 1985," plaintiffs had failed to state a § 1986 claim. *Spencer I,* 717 F.Supp. at 1062 n. 1.

Plaintiffs appealed to the Court of Appeals for the Second Circuit, which reversed the district court in a decision reported at 903 F.2d 171 (2d Cir.1990) (*Spencer II*). Addressing only the § 1985(3) claim, the Court of Appeals held that the complaint, read liberally, could be construed to allege a violation of one of Spencer's federal rights: his right to intrastate travel, a right the Second Circuit views as part of the constitutional right to interstate travel. *Id.* at 174. The Court of Appeals noted the complaint's allegation that Spencer had travelled from Yonkers to Coney Island, and explained that the plaintiffs might have been able to prove at trial that the "defendants sought to injure Spencer for having come into their neighborhood." *Id.* at 175. If plaintiffs could prove this proposition, and show that the attack was motivated by racial animus, plaintiffs would have stated a valid § 1985(3) claim. The Court of Appeals consequently reversed the decision to dismiss plaintiffs' complaint. Although the district court had separately considered and dismissed plaintiffs' § 1981 claim, the Second Circuit chose not to address that claim, noting only that the district court "is free to reconsider its ruling at any time before the entry of a final judgment." *Id.* at 176. The Second Circuit also suggested that counsel be appointed for defendants.[3]

On remand, the case was assigned to me.

## A. Whether Plaintiffs Had a Cause of Action Under 42 U.S.C. § 1985(3)

Section 1985(3) grants a cause of action to victims of conspiracies to deprive a person or class of persons of the equal protection of the laws.[4] The United States Supreme Court recently recapitulated the requirements of a § 1985(3) claim in *Bray v. Alexandria Women's Health Clinic,* —— U.S. ——, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). In *Bray,* a group of abortion clinics and supporting organizations sued under § 1985(3) to enjoin antiabortion groups from obstructing women's access to abortion clinics. The Court held that the *Bray* plaintiffs had failed to state a cause of action under § 1985(3) because they had failed to meet two requirements. First, the plaintiffs had not shown that "some racial, or perhaps otherwise class-based invidiously discriminatory animus [lay] behind the conspirators' action," as required by *Griffin v. Breckenridge,* 403 U.S. 88, 103, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Second, the plaintiffs had been unable to demonstrate that "the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment,'" as required by *United Bhd. of Carpenters & Joiners, Local 610 v. Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983). *Bray,* —— U.S. at ——, 113 S.Ct. at 758. Regarding the second requirement, the Court emphasized that "it does not suffice for application of § 1985(3) that a protected right be incidentally affected." Instead, the Court explained:

> The right must be "*aimed at;*" its impairment must be a conscious objective of the enterprise.... the "intent to deprive of a right" requirement demands that the defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at

---

**3.** The efforts of the court and the Southern District of New York's Pro Se Office to find attorneys for all four defendants were unsuccessful. Despite a long and arduous search for volunteer counsel, only one defendant succeeded in obtaining counsel. The court expresses its appreciation to Louis Pulvermacher, who represented defendant Muriale and received no compensation for doing so.

**4.** Section §. 1985(3) provides, in pertinent part:
> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the an action for the recovery of damages occasioned by such injury or deprivation against one or more of the conspirators.

least in part for the very purpose of producing it.

*Id.* at ——, 113 S.Ct. at 762 (citations and footnote omitted and emphasis supplied). Although the *Bray* plaintiffs alleged that defendants' action hindered the exercise of their right to travel, the Court concluded that this allegation was insufficient to ground a § 1985(3) claim, because defendants' primary intent in that case was to prevent access to abortion. Interference with the right to interstate travel was irrelevant to defendants, and merely incidental to their ultimate aim. *Id.*

■ Here, plaintiffs proved by a preponderance of the evidence at trial that defendants' actions were motivated by a discriminatory attitude toward blacks as a class (Special Verdict Form, Q.A(1)(c)), and thus there is no question that they have satisfied *Bray* 's and *Griffin* 's "invidiously discriminatory animus" requirement. The court thus turns to a consideration of whether plaintiffs have satisfied the "intent" requirement enunciated in *Bray.*

Like the *Bray* claimants, plaintiffs in this action based their § 1985(3) claim on an alleged violation of Spencer's right to travel.[5] However, plaintiffs introduced no evidence at trial from which a jury could conclude that defendants "aimed at" or acted with the purpose of depriving Spencer of his right to travel. Indeed, the theory upon which the Court of Appeals' remand was based, *see Spencer II,* 903 F.2d at 175, the possibility that Spencer was in defendants' neighborhood, was not borne out by the evidence at trial: the assault did not occur in defendants' neighborhood, or in any white neighborhood, but in the predominantly black neighborhood of Coney Island where Spencer's sister lived. At trial, plaintiffs' counsel conceded that plaintiffs could not show that defendants as-

saulted Spencer "because he was in an area they didn't want blacks to be in." (Tr. at 99).[6] In short, the judgment on plaintiffs' § 1985(3) claim must be vacated under *Bray,* because plaintiffs did not show that defendants acted with the purpose or intent to deprive Spencer of his right to travel.

**B. Whether Plaintiffs Had a Cause of Action Under 42 U.S.C. § 1981**

■ Section 1981(a) provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

The first and most frequently invoked portion of § 1981 is the "contracts clause," which forbids discrimination in the making and enforcement of contracts. In this action, in contrast, plaintiffs' claim is brought under the "equal benefit" and "like punishment" clauses of the statute. Although the United States Supreme Court has interpreted only the "contracts clause," the lower courts have recognized causes of action under other portions of § 1981, including the "equal benefit" and "like punishment" clauses. *See, e.g., Mahone v. Waddle,* 564 F.2d 1018, 1027–29 (3d Cir.1977), *cert. denied sub nom. Pittsburgh v. Mahone,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978); *Franceschi v. Hyatt Corp.,* 782 F.Supp. 712, 724 (D.P.R.1992); *Hawk v. Perillo,* 642 F.Supp. 380, 392 (N.D.Ill.1985); *Central Presbyterian Church v. Black Liberation Front,* 303 F.Supp. 894,

---

5. I note that *Bray* cast doubt on the Second Circuit Court of Appeals' position that the right to intrastate travel is on a constitutional par with the right to interstate travel, 113 S.Ct. at 763 (purely intrastate restriction does not always implicate the right to travel interstate). Because I conclude that *Bray* would preclude recovery even if Spencer had lived outside of New York State, however, I need not address *Bray* 's impact on the right to intrastate travel in the Second Circuit.

6. Although it could be argued that defendants interfered with Spencer's right to travel by preventing him from fleeing on his bicycle, no evidence was presented to show that defendants acted *with the purpose* of preventing flight. The evidence suggested rather that defendants' purpose was to beat Spencer, and that preventing his flight was merely incidental to their actions.

901 (E.D.Mo.1969). There is some disagreement, however, as to the scope of these clauses. Most of the decisions interpreting them have held that state action is required to state a claim under the "equal benefit" and "like punishment" clauses of § 1981. *See, e.g., Shaare Tefila Congregation v. Cobb,* 785 F.2d 523, 525–26 (4th Cir.1986), *rev'd in part on other grounds,* 481 U.S. 615, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987); *Mahone,* 564 F.2d at 1029; *Evans v. Verdon,* 1992 WL 486299 (E.D.N.Y.); *Brooks v. American Broadcasting Cos., Inc.,* 737 F.Supp. 431, 445 (N.D.Ohio 1990), *vacated, in part on other grounds,* 932 F.2d 495 (6th Cir.1991); *Spencer,* 717 F.Supp. at 1059 (S.D.N.Y.1989); *Rochon v. Dillon,* 713 F.Supp. 1167, 1172 (N.D.Ill.1989); *Eggleston v. Prince Edward Volunteer Rescue Squad,* 569 F.Supp. 1344, 1353 (E.D.Va.1983), *aff'd without op.,* 742 F.2d 1448; *Williams v. Northfield Mount Hermon School,* 504 F.Supp. 1319, 1332 (D.Mass.1981). However, a few courts have extended the clauses to encompass private conduct. *See, e.g., Franceschi,* 782 F.Supp. at 718 (plaintiff stated claim under "equal benefit" clause for racially-motivated denial of accommodation by private hotel); *Carey v. Rudeseal,* 703 F.Supp. 929, 930 n. 1 (N.D.Ga. 1988) (assault by members of Ku Klux Klan states claim under "equal benefit" clause); *Hawk,* 642 F.Supp at 390 (racially-motivated assault by private citizens states claim under "equal benefit" clause). Neither the Supreme Court [7] nor the Second Circuit Court of Appeals has addressed the reach of the "equal benefit" and "like punishment" clauses. Here, the court follows the reasoning of the Court of Appeals for the Third Circuit in *Mahone v. Waddle,* 564 F.2d at 1029, and

concludes that state action is a necessary requirement for a cause of action under the "equal benefit" or "like punishment" clauses of § 1981. Because state action is not alleged in this case, the jury verdict on plaintiffs' § 1981 claim must be vacated.

In *Mahone,* the Third Circuit Court of Appeals held that § 1981 reached conduct beyond discrimination in the making and enforcement of contracts, and that plaintiffs alleging racially motivated false arrest, abuse, and false testimony by police officers stated a claim under the "equal benefit" and "like punishment" clauses of § 1981. *Id.* at 1027–29. Noting that a broad reading of these provisions, read in light of the Supreme Court's extension of the "contracts clause" to private conduct in *Runyon v. McCrary,* risked "[giving rise to a federal cause of action for every racially motivated private tort,]" *id.* at 1029, the *Mahone* Court limited its holding by drawing a distinction between the "contracts" clause on the one hand and the "equal benefit" and "like punishment" clauses on the other. The Court of Appeals stated:

> The right to make and enforce contracts necessarily is concerned with relations between private individuals. It is usually with another individual, not the state, that a black person would seek to make a contract; it is that person's racially motivated refusal to make a contract which can cause harm to the black person. The right to make and enforce contracts can thus be infringed by private individuals and it is appropriate that private individuals be held liable for that infringement.

**7.** In *Johnson v. Railway Express Agency Inc.,* 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975), *Runyon v. McCrary,* 427 U.S. 160, 175, 96 S.Ct. 2586, 2596, 49 L.Ed.2d 415 (1976), and, more recently, *Patterson v. McLean Credit Union,* 491 U.S. 164, 172, 109 S.Ct. 2363, 2369, 105 L.Ed.2d 132 (1989), the Supreme Court held that § 1981 prohibits discrimination by private parties in the making and enforcement of contracts. Because none of the three decisions implicated the "equal benefit" or "like punishment" clauses, they left open the question of whether those clauses also extend to private conduct. In the Civil Rights Act of 1991, Congress enacted an amendment to § 1981 holding that "the rights protected by this section are protect-

ed against impairment by nongovernmental discrimination and impairment under color of State law." Civil Rights Act of 1991, Pub.L. No. 102–166, Title I, section 101, 105 Stat. 1071. Legislative history makes clear, however, that the purpose of the amendment was to "codify" *Runyon*'s holding that "private as well as public contracting" is reached by § 1981. H.R.Rep. No. 102–40(II), 102d Cong., 1st Sess. 37 (1991), *reprinted in* 1991 U.S.C.C.A.N. 595, 731. Because I conclude that the amendment does not speak definitively on the question of whether the "equal benefit" and "like punishment" clauses reach private conduct, I need not consider whether the statute applies retroactively to the conduct in this case.

The words "full and equal benefit of all *laws* and *proceedings* for the security of persons and property" (emphasis supplied), on the other hand, suggest a concern with relations between the individual and the state, not between two individuals. The state, not the individual, is the sole source of law, and it is only the state acting through its agents, not the private individual, which is capable of denying to blacks the full and equal benefit of the law. Thus, while private discrimination may be implicated by the contract clause of section 1981, the concept of state action is implicit in the equal benefit clause. The like punishment clause may be read in the same way.

564 F.2d at 1029.

This court agrees that the language of the "like punishment" clause suggests a concern with official, rather than private conduct. Although the argument that the "equal benefit" clause cannot be construed to reach private conduct is slightly less persuasive, the court finds *Mahone*'s interpretation of that clause sound as well, because it is both natural and consistent with Supreme Court precedent. As the *Mahone* Court points out, creating laws "for the security of persons and property" is traditionally the role of state legislators. Although it is conceptually possible for a private party to deprive another of the "equal benefit" of those laws, it is difficult to imagine what such a deprivation would be other than the violation of the state laws themselves, coupled with a racial animus. Reading the clause to encompass this kind of conduct, however, risks creating a § 1981 action "whenever a white man strikes a black [man] in a barroom brawl." *Id.* at 1029. Extending the "equal benefit" clause to private conduct would have the effect of federalizing all racially-motivated state-law torts that implicate "the security of persons

and property." The court does not believe that Congress intended § 1981 to reach this far.

The need to cabin the reach of the federal civil rights laws so as not to create a "general federal tort law," *Griffin v. Breckenridge*, 403 U.S. at 101, 91 S.Ct. at 1797, has long been a theme of the Supreme Court's decisional law. In *Griffin*, for example, the Court held that § 1985(3) was intended to reach private conspiracies, but cautioned that the drafters of the statute "were equally emphatic that they did not believe . . . 'that Congress has a right to punish an assault and battery when committed by two or more persons within a State.'" *Id.* at 102, 91 S.Ct. at 1798. The Court expressed a similar concern in *Carpenters*, 463 U.S. at 834–35, 103 S.Ct. at 3359–60, and in *Bray*, —— U.S. at ——, 113 S.Ct. at 759, which articulate limitations on the applicability of § 1985(3) to private conduct in addition to the limitation set forth in *Griffin*.

This concern is no less important in the context of § 1981. The Court noted in *Patterson v. McLean Credit Union* that, "[a]lthough we must do so when Congress plainly directs, as a rule we should be and are 'reluctant to federalize' matters traditionally covered by state common law." 491 U.S. 164, 183, 109 S.Ct. 2363, 2375, 105 L.Ed.2d 132 (1989).[8] If the "equal benefit" clause of § 1981 were extended in this case to reach private action, the court sees no limiting principle to prevent its becoming the "general federal tort law" the Supreme Court has expressly rejected. Defendants' attack on Spencer appears to be precisely the kind of "assault and battery between two or more persons within a state" that the Court has been unwilling to view as encompassed by the federal civil rights laws. *Griffin*, 403 U.S. at 101–103, 91 S.Ct. at 1797–1798.[9] The

---

**8.** In the Civil Rights Act of 1991, Congress "overturned" *Patterson* to the extent *Patterson* held that § 1981 reached only discrimination in the "making" and "enforcement" of contracts, but not in other contractual relations. Congress left the remainder of *Patterson*'s holding undisturbed. Civil Rights Act of 1991, § 101, 105 Stat. 1071. *See also* H.R.Rep. No. 102–40(I), 102d Cong., 1st Sess. 92 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 627–631.

**9.** Although it is possible that the 1991 amendment to § 1981, Civil Rights Act of 1991, 105 Stat. 1071, was intended to create a tort remedy for victims such as Spencer, the court believes that Congress would not have departed so abruptly from current decisional law without stating explicitly that it was doing so. For the text of the amendment, *see supra* note 7.

court thus declines to extend § 1981 to reach plaintiffs' claim.[10] Because the court holds that plaintiffs failed to state a claim under § 1981, it need not address the issue of whether § 1981 creates a cause of action on plaintiffs' own behalf for the loss of their son.

### C. Additional Issues

#### 1. *Joint and Several Liability*

◼ In its December Order, the Court required the parties to address whether defendants should be held jointly and severally liable for all compensatory and punitive damages awarded by the jury. As to compensatory damages, the Court concludes that defendants must be held jointly and severally liable, because the evidence submitted at trial was insufficient to allow a jury to determine the degree to which the defendants' separate acts contributed to the plaintiffs' injuries. *See Ravo v. Rogatnick,* 70 N.Y.2d 305, 520 N.Y.S.2d 533, 538, 514 N.E.2d 1104, 1109 (1987) (joint tortfeasors are jointly and severally liable for single, indivisible injury, and jury's apportionment of responsibility among defendants is relevant only to define amount of contribution each defendant may claim from the others). New York law is clear, however, that defendants may not be held jointly and severally liable for punitive damages.[11] *See Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 374 (2d Cir.1988), *Felice v. Delporte,* 136 A.D.2d 913, 524 N.Y.S.2d 919, 920 (4th Dep't 1988).

#### 2. *Claims against Frank D'Antonio*

◼ Finally, as indicated in the Court's December Order, the judgment against Frank D'Antonio must be vacated and the action dismissed on all counts, because D'Antonio died prior to the trial of this action, and plaintiffs failed to continue the action against his personal representative, as required by N.Y.Est.Powers & Trusts Law § 11–3.2.

### Conclusion

For the reasons stated above, the court grants defendants' motion to vacate the jury's verdict on plaintiffs' federal causes of action under 42 U.S.C. §§ 1985(3) and 1981. The Clerk of the Court is directed to enter a judgment on plaintiffs' state law assault and battery claim against defendants Casavilla, Mackey, and Muriale jointly and severally, for compensatory damages of $250,000. The Clerk is directed to enter a judgment on the state law assault and battery claim against defendants Casavilla, Mackey, and Muriale individually, for punitive damages in the following amounts: Defendant Casavilla, $202,500; defendant Muriale, $36,000; and defendant Mackey $9,000. The total liability of each defendant, for both compensatory and punitive damages, is thus: Defendant Casavilla, $452,500; defendant Muriale, $286,000; and defendant Mackey, $259,000.[12] The Clerk of the Court is directed to vacate the judgment against deceased defendant D'An-

---

**10.** Plaintiffs argue that *Mahone*'s interpretation of the "equal benefit" clause is foreclosed by the interpretation given a similar clause in § 1985(3), the "equal protection of the laws" clause, in *Griffin,* 403 U.S. at 97, 91 S.Ct. at 1795 (holding that "there is nothing inherent in the phrase that requires the action working the deprivation to come from the State"). Unlike § 1981, however, § 1985(3) contains express language encompassing "two or more persons" who "go on the highway" to deprive others of equal protection. *See supra* note 4 for text of § 1985(3). As Judge Easterbrook noted in *Stevens v. Tillman,* 855 F.2d 394, 403 (7th Cir. 1988), the resulting "admixture of private and public action has befuddled courts ever since." There is no reason to add to this befuddlement where, as in § 1981, there is no express reference to private action. Plaintiff's argument also overlooks *Griffin*'s caution against federalizing

all racially-motivated state-law torts, a caution reiterated in *Carpenters,* 463 U.S. at 834–35, 103 S.Ct. at 3359, and *Bray,* —— U.S. at ——, 113 S.Ct. at 795.

**11.** The punitive damages issue is governed exclusively by New York law, because the jury awarded punitive damages only on the state law assault claim.

**12.** Because the jury awarded no compensatory or punitive damages on plaintiff's §§ 1985(3) and 1981 causes of action on behalf of Spencer, the court's dismissal of the federal claims does not diminish that portion of plaintiffs' award. However, the jury did award plaintiffs $300,000 compensatory damages under §§ 1985(3) and 1981 on plaintiffs' *own* behalf, and the court's dismissal of the federal claims sets aside this portion of plaintiffs' award.

tonio, and to dismiss the complaint against him on all charges.

SO ORDERED.